## HAMILTON v. SOUTHERN NEV. GOLD & SILVER MIN. CO.

*(Circuit Court, D. Nevada. December 23, 1887.)*

1. **MINES AND MINING—LOCATION OF—RIGHTS UNDER.**
   The locator of mining ground under U. S. Rev. St., prior to the actual payment of the purchase money, and the reception by him of the receipt therefor, issued by the register and receiver of the proper land-office, possesses a mere privilege to purchase the property, and a constable's sale of the mine before payment, only passes that privilege. If the sale is valid, the purchaser can only step into the shoes of the execution debtor, and thereby obtain a right to go on, perform the necessary acts, pay the purchase money, contest the rights of other adverse claimants, and make the entry and receive the certificate of purchase himself. If the judgment debtor subsequently performs

these acts himself, and receives the title from the government, a new and further title becomes vested in the judgment debtor, which does not pass by virtue of the officer's deed.

2. PUBLIC LANDS—TITLE TO—PAYMENT—RECEIPT.

A party having paid the purchase money, and received the certificate of purchase, is the owner of the land. The United States has ceased to have any pecuniary interest in it. It holds the naked, dry, legal title for the holder of the certificate.

3. SAME.

Such a certificate of purchase cannot be collaterally assailed.

4. LIMITATION OF ACTIONS—MINING CLAIM—ADVERSE POSSESSION.

Possession of a mining claim, in order to vest a title under the statute of limitations, must be open, notorious, exclusive, and continuous, and not a loose, uncertain, scrambling, and mixed possession.

5. MINES AND MINING—ADVERSE CLAIMS—PUBLICATION OF NOTICE.

Under an application for a patent for mining ground, under sections 2325, 2326, Rev. St., unless adverse claims are filed with the register and receiver of the proper land-office within 60 days after the first publication of the notice, such adverse claims are waived, and the applicant is entitled to a patent upon the payment to the proper officer of the statutory fees and costs, and it shall thereafter be assumed that no adverse claim exists; and thereafter no objection from third parties to the issue of the patent shall be heard, except that it be shown that the applicant has failed to comply with the terms of the statute.

6. SAME.

The interest or title obtained by a purchaser at a constable's sale prior to the expiration of the publication of the notice is an adverse claim which, unless filed as the statute provides, is waived.

7. SAME.

The statute makes such a proceeding, regularly prosecuted, when the period of notice is completed without the presentation of an adverse claim, absolutely conclusive against adverse claims. The proceeding is in the nature of a proceeding *in rem*, and is binding upon all the world, so far as any unpresented adverse claims are concerned.

8. JUDICIAL SALE—TITLE OF PURCHASER.

The purchaser at a judicial sale acquires only the present interest of the judgment debtor. No after-acquired title is affected by such a sale. The sheriff's deed can, at most, only have the operation of a quitclaim deed in the strictest sense.

9. EQUITY—MASTER—OBJECTIONS BEFORE.

The general objection "irrelevant and incompetent," made before the master in an equity case, is not sufficiently specific to be entitled to consideration upon the hearing.

10. SAME—PRACTICE—OBJECTION TO TESTIMONY—AMENDMENT OF PLEADINGS.

Where an objection to the relevancy or competency of the testimony is made specific for the first time in the closing argument for the complainant in an equity case, the court will permit the defendant to so amend his pleadings as to obviate the objection, where the testimony is before the court showing a proper case therefor.

(*Syllabus by the Court.*)

In Equity.

This is a suit brought by plaintiff, Hamilton, against the Southern Nevada Gold & Silver Mining Company, to determine an adverse claim of title to a mine.

*R. S. Messick* and *M. N. Stone*, for complainant.

*J. McM. Shafter*, *W. C. Belcher*, and *Scrivner & Boone*, for defendant.

SAWYER, J. This is a suit in equity, brought under the statute of Nevada, by a party claiming to be in possession against a party alleged to be out of possession, to determine an adverse claim of title to a mine.

The locator's title was conveyed to defendant June 30, 1880, and the complainant alleges that he has obtained the title so conveyed to defendant, through sales on certain judgments made subsequently to the said conveyance of June 30, 1880. A constable sold the premises on a judgment rendered by a justice of the peace against defendant, said sale having been made July 21, 1882. Such title, as passed by that sale, has been conveyed to complainant. An appeal from said judgment was taken to the district court, and on such appeal a judgment was rendered in the district court for the amount recovered below, and subsequent costs. Under this judgment, for the same indebtedness, the property was again sold on October 11, 1883, and such title as passed by this sale has also become vested in complainant. It is insisted that the judgment of the justice of the peace is void, on the ground that, it not being a court of record, its jurisdiction must affirmatively appear, and that the record does not show jurisdiction over the person; also, for numerous other reasons. It is also claimed, and if it be so I do not see how the conclusion can be avoided, that the justice's court, not having obtained jurisdiction, the appeal from this void judgment could not give the district court jurisdiction, and its judgment is also void. On the other hand if, the justice's judgment and the sale under it be valid, the sale under the district court judgment is claimed to be void because the sale was for a much larger amount than was due, the judgment for the entire indebtedness having been fully satisfied by the sale in the court below. It is also claimed that the judgments and sales upon both judgments are void for many other reasons. The defendant also claims title under another judgment, and sale thereunder, made April 29, 1882, to one Purcell,— an older sale than either of those under which complainant claims. If this sale is valid, it cut off defendant's original title before the sales under which complainant holds, and they took nothing by those sales, and the title upon which he relies fails. The title derived under this sale, which was outstanding at the commencement of this suit, has been conveyed to defendant since the suit was commenced. But since it intercepted the very title under which complainant holds, and is the same title upon which he relies, it is just as effectual outstanding as a defense as if it were in the defendant at the institution of the suit, even if, as complainant claims, his objection to the evidence, because not set up by supplemental answer, was sufficiently specific to reject it, which is, at least, doubtful. But the validity of this judgment and sale is also assailed on various grounds. It may well be considered doubtful whether any of these judgments and sales are valid.

The statute of limitations is also relied on by complainant. But that title is disputed by defendant, on the ground that there was no notorious, exclusive, and continued adverse possession by complainant; that the acts of possession were so obscure that defendant was not even aware that complainants were in possession at all, or claimed title. The only evidence of actual possession for the prescribed time, was, going upon the land once, and looking at its boundaries, and afterwards doing the annual hundred dollars worth of work in tunnels where those doing it were

unseen, during that time, for the purpose of not forfeiting complainant's rights, and not rendering the claim liable to relocation. While defendant also claims and introduces testimony showing, or at least tending to show, that it also did the annual work required by the statute to preserve its rights during the same period for the same purpose, and so was itself in possession; that its possession was better than, or at least as good, as that of complainant. Evidently such a loose, uncertain, scrambling, and mixed possession is not sufficient to vest a title under the statute of limitations.

But the defendant relies upon another defense, and the view we take of it renders it unnecesary for us to decide the numerous other points made, already referred to. On August 5, 1882, defendant filed an application in the proper land-office to purchase the premises in question, in pursuance of sections 2325, 2326, Rev. St. The 60 days for publication expired October 7, 1882, and on May 8, 1886, defendant paid for the land, and a certificate of purchase was issued to it. Neither the complainant, nor any of his grantors, before the expiration of the time, or at any time, filed any adverse claim with the register and receiver of the land-office. And the statute provides that—

"If no adverse claim shall have been filed with the register and receiver of the proper land-office at the expiration of sixty days of publication, it shall be assumed that the applicant is entitled to a patent upon the payment to the proper officer of four dollars per acre, and that, *no adverse claim exists: And thereafter no objection from third parties to the issuance of a patent shall be heard,* except it be shown that the applicant has failed to comply with the terms of this chapter."

Thus the statute itself makes a proceeding, regularly prosecuted, when the period of notice is completed without the presentation of an adverse claim, absolutely conclusive against all adverse claimants. The proceeding is in the nature of a *proceeding in rem,* and is binding upon all the world, so far as any unpresented adverse claim is concerned. The title, such as it was, good or bad, derived under the constable's sale of July 21, 1882, was an existing adverse claim during the proceedings of defendant for purchase under sections 2325, 2326, Rev. St., and was lost by failure to present it. This sale, therefore, valid or void, can afford no grounds for the relief sought.

But complainant insists that his title under the second sale on the judgment on appeal did not exist at the time of the application to purchase, and during the running of the notice, and as complainant and his grantors had no adverse claim at that time they cannot be affected by failure to present one; that he is a successor in interest to defendant, and not an adverse claimant, and, as such, is entitled to the benefit of defendant's application and purchase. Conceding that judgment to be valid, for the purposes of this suit, though I am by no means satisfied that it is, the most that could pass by the sheriff's sale was the then present interest or estate of the defendant. It could not carry any subsequently acquired interest. The then present interest of the defendant was only a mere privilege to purchase, which he might abandon if he chose. A sheriff's

deed can, at most, only have the operation of a quitclaim deed in its strictest sense. It cannot pass an interest which the owner did not have before the sale, but which he subsequently acquires. If the purchase at sheriff's sale was valid, and the purchaser then stepped into the shoes of the execution debtor, it only gave him a right to go on himself, perform the necessary acts to be performed, pay the purchase money himself, contest the rights of other adverse claimants, such as the Northern Belle, make the entry, and, upon payment, receive the certificate of purchase. Since that sheriff's sale the complainant has done nothing, but the defendant has itself gone on and procured the title from the United States upon further and new considerations, in which complainant has no interest, and a new and further title to the premises has become vested in defendant. It is a right at law. If complainant has any equities which he might enforce by doing to the defendant such equities as the nature of the case requires, but I do not say that he has, he has not framed his bill upon any such theory. His bill goes upon the theory that he is seized of a legal title already to this mining land, whereas the title derived from the government is vested in the defendant, and it was acquired since the sheriff's sale to complainant's grantors. The defendant having paid the money, defended the suits on adverse claims, and received the certificate of sale, is the owner of the land. The United States has ceased to have any pecuniary interest in it. They hold the naked, dry, legal title for the holder of the certificate. *People* v. *Shearer*, 30 Cal. 648; *Gwynne* v. *Niswanger*, 15 Ohio, 368; *Astrom* v. *Hammond*, 3 McLean, 108; *Carroll* v. *Perry*, 4 McLean, 26; *Ross* v. *Supervisors*, 12 Wis. 38; *Goodlet* v. *Smithson*, 5 Port. (Ala.) 246; *Carroll* v. *Safford*, 3 How. 441; *Witherspoon* v. *Duncan*, 4 Wall. 218, 219; *Hughes* v. *U. S.*, Id. 232; *Wirth* v. *Branson*, 98 U. S. 118; *Mining Co.* v. *Dangberg*, 2 Sawy. 455. This certificate cannot be collaterally assailed, and, as before said, if there are any equities in favor of complainant, they must be enforced by a bill framed for and adapted to the purpose.

It is insisted that the certificate was irregularly obtained, and that it is void on that ground, for the reason that there was pending litigation between defendant and other parties to settle the title to the mining ground between them at the time the certificate was issued. Within the time allowed by statute, after the publication of notice, the Northern Belle Mining Company filed an adverse claim, and in due time commenced several suits against the defendant to determine the rights of the respective claimants. These suits were the occasion of the delay in the issue of the certificate to defendant. They were continued along, for some reason, without any active prosecution, for several years. Finally, the defendant, in the absence of any representative of the Northern Belle Mining Company, procured a dismissal of those suits for want of prosecution. After their dismissal, the defendant presented transcripts of the records to the proper land-office, showing that fact, and thereupon the purchase money was received from, and the certificate of purchase issued to, the defendant. Afterwards, upon a showing on the part of the Northern Belle Company, the dismissals in the several suits were set aside, and

the causes restored to the calendar for further proceedings, and they still remain undetermined. I do not perceive how that condition of things can avail the complainant in this suit. He does not claim under the Northern Belle Company, or in any way connect himself with the rights involved in those suits. He is not in privity with the Northern Belle Company. The title has still passed to the defendant from the United States in a course of proceedings apparently regular, and it can only be divested in some direct proceeding appropriate to the case. If the Northern Belle should succeed in establishing the superior right in the pending suits, it may be that it will be able to control the title for its own benefit, upon a proper bill in equity against defendant, filed for that purpose. But whether it can or not is no concern of the complainant in this suit. Till divested by some proper proceeding, the right to a patent will remain where it now is.

Conceding the adverse possession to be sufficient to set and keep the statute of limitations in motion, it has not in any event run long enough to be of any avail to cut off the new right vested in defendant under the certificate of entry so recently issued. Indeed, it has not yet begun to run. This suit was commenced on March 29, 1886, and the certificate of entry was issued on May 8, 1886, since the commencement of the suit.

It is objected that this certificate is not available in this suit for the reason that it was not pleaded in the answer. As it was obtained since the commencement of this suit, it is insisted that this title should have been set up in a supplemental answer, and, as this was not done, it cannot be considered at all. It would, undoubtedly, have been the proper practice to set it up in a supplemental answer. But I am by no means certain that it was absolutely necessary to so set it up in order to render it available. The right to the certificate had its inception at the making of the application, but its issue was delayed by the adverse claim and suits by the Northern Belle. When issued, however, the right related back to the time of its inception by making the application, so far as supporting the right of defendant is concerned. But this specific objection was not made at all before the master, nor even in the opening argument of complainant. It was only first presented in complainant's closing argument, in reply to the argument of defendant, wherein this title was earnestly pressed and relied on. The party offering evidence is entitled to have the particular portion of evidence objected to pointed out, *and the specific ground of objection stated, in order that he may obviate the objection.* *Satterlee* v. *Bliss*, 36 Cal. 489, 511; *Cochran* v. *O'Keefe*, 34 Cal. 554, 558. Objection that evidence offered is "irrelevant and incompetent" is not sufficiently specific, even in a criminal case. *People* v. *Frank*, 28 Cal. 519. "Irrelevancy" is too general and insufficient. "The party must state the exact point of his objection." *Owen* v. *Frank*, 24 Cal. 177. The general objection "irrelevant and incompetent," made before the master, it appears to me, is not sufficiently specific to be entitled to consideration now. The real point of the objection, that the title perfected since the commencement of the suit should have been set up in a

supplemental answer, should have been specified. The defendant would then have been able to obviate it by obtaining leave to set it up. But this objection was reserved till the closing argument of the complainant at the final hearing of the case. In my judgment, the failure to call attention to it before the master was a waiver of the objection. When particular grounds of objection are specified, such specification is exclusive, and all grounds not specified are waived. *Evanston* v. *Gunn*, 99 U. S. 665; *Belk* v. *Meagher*, 104 U. S. 279. "If a general objection to evidence is made, but no ground of objection is specified, the objection will not be considered. If a ground of objection is stated, all grounds not specified are considered waived." *Fischer* v. *Neil*, 6 Fed. Rep. 90; see, also, *Wood* v. *Weimar*, 104 U. S. 795; *Camden* v. *Doremus*, 3 How. 529: *Burton* v. *Driggs*, 20 Wall. 133.

But if wrong in these views,—as to the sufficiency of the specification of the objection, or as to waiver; and if necessary to set this title up in the answer in order to make it available, notwithstanding its relation back to its inception, or as showing want of title in complainant,—the objection is technical purely. The evidence is all before the court, together with the evidence introduced by complainant to meet and overthrow the defense. It is, therefore, a proper case in which to allow the defendant to amend by setting up this supplemental matter and conform it to the proofs. Time to file such an amendment would undoubtedly have been asked and granted, had the objection been brought to the notice of defendant at any time before the final hearing. To reject it now would be only to entail further litigation in another suit. It would not conduce to the due administration of justice to reject this defense now, when all the means are before the court for doing equity between the parties. *Neale* v. *Neales*, 9 Wall. 1, 8; *Lakin* v. *Mining Co.*, 11 Sawy. 249, 250, 25 Fed. Rep. 337; *Zeilin* v. *Rogers*, 10 Sawy. 208, 21 Fed. Rep. 103, per FIELD, C. J.; *Coghlan* v. *Stetson*, 19 Fed. Rep. 727.

The same objection is made in the same way to the title of defendant derived from Purcell by deed made since the commencement of the suit, and the same principles are applicable to that defense. But the sale, if valid, was sufficient to show that the title relied on by complainant had been anticipated and cut off without this deed to defendant. But I think the defendants entitled to set up both their defenses in a supplemental answer so as to avoid all questions as to relevancy, and that the bill must be dismissed.

Let defendant have leave to amend by setting up these supplemental matters before the entry of the final decree, and let there be a decree entered dismissing the bill, with costs.