## GILLIS v. DOWNEY.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1898.)

### No. 979.

1. SUIT TO QUIET TITLE—OWNERSHIP OF TITLE—MINING LANDS.

While, as applied to ordinary claims of real estate in nonmining states or territories, the rule is general that to entitle the claimant to maintain an action to quiet title he must be the owner of the title to the land, yet, in respect to claims to mining lands in the Western states and territories, a system of mining customs, usages, and rights has developed taking the form and sanction of prescriptive laws of universal recognition, which national and state legislatures later crystallized into written statutes, and in which ownership of the title is not essential to the maintenance of such an action.

2. LOCATION OF MINING LANDS—PATENT.

So long as the locator of mining lands complies with the statutory requirements and performs $100 worth of work in each year, he is entitled against all the world, subject to the paramount sovereignty of the United States, to hold and enjoy his possession, even though he never apply for nor take out a patent. Rev. St. 1878, §§ 910, 2322, 2324.

3. EQUITY JURISDICTION—STATE STATUTE.

Where the requisite diverse citizenship exists, a suit may be brought on the chancery side of the federal court in a given state by a person in actual possession of real estate therein to quiet his title as against an adverse claimant, predicating the suit upon the state statute extending to such cases the jurisdiction of the state courts.

4. MINING CLAIMS—ADVERSE CLAIM—SIXTY DAYS' NOTICE.

The fact that the 60 days prescribed in Rev. St. 1878, § 2325, for publication of notice of an application for a patent has expired before the application is adversed, does not preclude a contest of the applicant's right to a patent, where the adverse claim does not arise until after the expiration of the 60 days, and where the applicant has let his application lie dormant for years without either paying the purchase money or doing the required $100 worth of work each year.

5. SAME—ABANDONMENT—RELOCATION.

The filing of an application for a patent does not suspend the obligation to keep up the required annual work where, without paying the purchase money, the claimant permits his application to sleep for years; and upon such failure to comply with the conditions the claim is open to relocation in the same manner as if no location had ever been made.

Appeal from the Circuit Court of the United States for the District of Wyoming.

Nellis E. Corthell, for appellant.

Stephen W. Downey, for appellee.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge.    The appellant (complainant below) instituted suit in the United States circuit court for the district of Wyoming to quiet the title and determine the right of possession to certain lands containing placer mines.    The complainant is a citizen of Illinois, and the defendant a citizen of Wyoming.    The complainant at the institution of the suit was in the actual possession of the real estate.    The bill, in substance, recites that the lands in question are mineral lands, and were located as such in 1896 by the grantors of the complainant, and that the locations were made under and conformably to the acts of congress relating to the acquisition by location of such lands; that the grantors of complainant, and the complainant since he acquired by deeds of conveyance the rights and interest of said locators, have complied with all the requirements of the statute and local rules of miners in said state relating to discovery, location, marking, recording, working, and possession of placer mining claims.    The bill alleges that the defendant is asserting an estate and interest in said lands under a precedent location, made by him, under the mining laws, and his grantors, in 1890, and that in 1891 the defendant filed his application in the land office for a patent to said lands.    The bill then alleges that the claim of the defendant is ineffectual, because it includes nonmineral lands; because the defendant had not discovered mineral deposits, and failed to mark his locations upon the ground, as also to perform the annual work required by the statute in each of the years from 1891 to 1896, and failed to comply with the laws and local regulations respecting possessory titles to such lands, with the further averment that about January 1, 1892, the defendant abandoned his claim and any right to the possession of the lands.    The bill further avers that on February 3, 1897, the complainant filed in the proper land office his protest and notice of adverse claim to the application for patent, which protest was pending therein at the time of the institution of this suit; that the purchase price for said land has not been paid nor tendered, and no patent had issued therefor.    The prayer of the bill is that the defendant be required to set out his claim, that he be enjoined from asserting any adverse claim against complainant, that the complainant's title be quieted and established, and that he be adjudged entitled to the possession and peaceable enjoyment of the lands.    To this bill the defendant appeared and filed a double plea in the nature of a demurrer and plea to the jurisdiction, raising the questions that the matters complained of are not cognizable in a court of equity; that the bill does not contain any equity entitling the complainant to relief; and, further, that it appears from the bill that the matter in controversy between the complainant and the defendant is pending

in the land-office department, which has full jurisdiction over the subject-matter, and precludes the jurisdiction of the United States court. The circuit court sustained the demurrer and the plea, and dismissed the bill. To reverse this decree the complainant prosecutes this appeal.

We are not advised by the record on what particular ground the court below based its decision. The chief reliance of counsel for defendant for upholding the decree is that the mere possessory title to the land, as disclosed by the bill, is not sufficient to support a suit to quiet the title. The case of Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, is mainly relied upon to support this contention, in which it was, in effect, held that a bill in equity to quiet title cannot be sustained, either under general equity jurisprudence or under the statute of Nebraska, by one having an equitable title only. In that case the interest of the complainant was obtained under an execution, which was a mere equitable interest, the legal title being outstanding, and the purchase money not having been paid. All the purchaser acquired under the execution sale was the interest of the defendant in execution, and a right to the legal title on payment of the money. It was of such condition that the court said that·

"Under the jurisdiction and practice in equity, independently of statute, the object of the bill to remove a cloud upon the title and to quiet the possession of real estate is to protect the owner of the legal title from being disturbed in his possession, or harassed by suits in regard to that title; and the bill cannot be maintained without clear proof of both possession and the legal title. * * * A person out of possession cannot maintain such a bill, whether his title is legal or equitable, for, if his title is legal, his remedy at law by action in ejectment is plain, adequate, and complete, and, if his title is equitable, he must acquire the legal title, and then bring ejectment."

But the court further observed:

"It is possible that one who holds land under a grant from the United States, who has done everything in his power to entitle him to a patent (which he cannot compel the United States to issue to him), and is deemed the legal owner so far as to render the land taxable to him by the state in which it lies, may be considered as having sufficient title to sustain a bill in equity to quiet his right and possession."

The statute of Nebraska then in force authorized an action to be brought "by any person or persons, whether in the actual possession or not, claiming title to real estate against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest and quieting the title to said real estate." Gen. St. Neb. 1873, p. 882. The court held that the term "the title," as used in this statute, meant the legal title. Therefore the complainant must assert by his suit something more than that he is in possession, or that he has the title to the premises. He must claim, and, of consequence, prove, "title to the real estate."

As applied to ordinary claims to real estate in nonmining states or territories like the state of Nebraska, the rule is general that to entitle the claimant to maintain an action to quiet title he must be the owner of the title to the land. But in respect to claims to mining lands in our Western states and territories, beginning with the discoveries of the precious metals in California in 1848, followed up

with subsequent explorations and discoveries, a system of mining customs, usages, and rights has developed, taking the form and sanction of prescriptive laws of universal recognition, which national and state·legislatures later crystallized into written statutes. Mr. Justice Field, by reason of his early and long connection with the origin and growth of this unwritten law of the Pacific slope, both on the state and federal bench, has been recognized as high authority touch-·ing this branch of American jurisprudence. In Jennison v. Kirk, 98·U. S. 453, speaking of the necessity of rules and customs constituting the very foundation of proprietary rights in mining property, he said that:

"A series of wise judicial decisions had molded these regulations and customs into a comprehensive system of common law, embracing not only mining law, properly speaking, but also regulating the use of water for mining purposes. The miner's law was part of the miner's nature. He had made it, and he trusted it and obeyed it. He had given the honest toil of his life to the discovery of wealth, which, when found, was protected by no higher law than that enacted by himself under the implied sanction of a just and generous government."

Again, this learned judge said:

"In every district which they occupied they framed certain rules for their government, by which the extent of ground they could severally hold for mining was designated, their possessory right to such ground secured and enforced, and contests between them either avoided or determined. These rules bore a marked similarity, varying in the several districts only according to the extent and character of the mines; distinct provisions being made for different kinds of mining, such as placer mining, quartz mining, and mining in drifts or tunnels. They all recognized discovery, followed by appropriation, as the foundation of the possessor's title, and development by working as the condition of its retention. And they were so framed as to secure to all comers, within practicable limits, absolute equality of right and privilege in working the mines. Nothing but such equality would have been tolerated by the miners, who were emphatically the lawmakers, as respects mining upon the public lands in the state. The first appropriator was everywhere held to have, within certain well-defined limits, a better right than others to the claims taken up; and in all controversies except as against the government he was regarded as the original owner, from whom title was to be traced."

It was, therefore, the intent and object of the federal statute in question in this case "to give the sanction of the United States to possessory rights which had previously rested upon local customs, laws, and decisions of the courts, and to prevent such rights from being lost on sale of the land." To emphasize not only the dignity of possessory rights acquired by mining locators, but to establish their status in the courts, and protect such rights, congress, in 1865, enacted that:

"No possessory action between persons in any court of the United States for the recovery of any mining title or for damages to any such title, shall be affected by the fact that the paramount title to the land in which such mines lie is in the United States; but each case shall be adjudged by the law of possession." 13 Stat. 441, c. 64, § 9; Rev. St. 1878, § 910.

By "mining title," as employed in this statute, evidently is meant the title which the miner obtains by his discovery and location, followed up by a compliance with the statutory regulations to preserve his right of possession; and therefore, in a possessory action between persons, notwithstanding the paramount title to the land is in

the United States, "the case shall be adjudged by the law of possession" as between the parties.    Hence it is declared in section 2322, Rev. St. 1878, that:

"The locators of all mining locations heretofore made, or which shall hereafter be made, on any mineral vein, lode or ledge, situate on the public domain, their heirs and assigns * * * so long as they comply with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their location, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side-lines of such surface locations."

Section 2324 authorizes the miners in mining districts to make their own regulations, not in conflict with the laws of the United States or those of the state or territory, in respect to the location, manner of recording, and amount of work necessary to hold possession, with the exception that the statute requires that the location shall be distinctly marked on the ground, and direction as to the recording of the mining claim, with the additional requirement that until the patent has been issued not less than $100 worth of work shall be performed or improvements made during each year.    It is recognized law that, so long as the locator complies with the statutory requirements, and performs the $100 worth of work in each year, he is entitled against all the world, subject to the paramount sovereignty of the United States, to hold and enjoy his possession. He may never apply for nor take out a patent, yet, so long as he does the acts required by said section 2324, he may hold and enjoy perpetually his claim.

Mr. Justice Fuller, in Manuel v. Wulff, 152 U. S. 510, 14 Sup. Ct. 653, in summarizing the rights acquired by the locator under section 2322, said:

"When such qualified persons have made a discovery of mineral lands, and complied with the law, they shall have the exclusive right to possession and enjoyment of same.    It has, therefore, been repeatedly held that mining claims are property in the fullest sense of the word, and may be sold, transferred, mortgaged, and inherited without infringing the title of the United States; and when a location is perfected it has the effect of a grant by the United States of the right of present and exclusive possession."    Forbes v. Gracey, 94 U. S. 762; Belk v. Meagher, 104 U. S. 279; Gwillim v. Donnellan, 115 U. S. 45, 5 Sup. Ct. 1110;  Noyes v. Mantle, 127 U. S. 348, 8 Sup. Ct. 1132.

The statute (section 2326) expressly recognizes the possessory right to be the subject of litigation between competing claimants, subject to the usual jurisdiction of courts over real actions.    It expressly provides that whenever the claim of any locator is adversed, the proceeding before the land-office department "shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived."    Neither party to the contest is required to have fully paid the purchase money.    This payment is made as a condition precedent to the issue of the patent. In Perego v. Dodge, 163 U. S. 160–165, 16 Sup. Ct. 973, the court, speaking of the statute in question, said:

"Thus the determination of the right of possession as between the parties is referred to a court of competent jurisdiction in aid of the land office, but the form of action is not provided for by statute, and apparently an action at law or suit in equity would lie, as either might be appropriate under the particular circumstances,—an action to recover possession when plaintiff is out of possession, and a suit to quiet title when he is in possession."

On account of the character of the locator's title without having paid the final purchase money, or having obtained a patent, the courts recognize the importance, after congress has held out to the locator inducement to go upon and into the mineral lands to bring out the precious ores, to increase the nation's wealth, of extending to him every weapon in the armory of justice, offensive and defensive, to protect his right of enjoyment, and give him the sense of security while prosecuting his work. How can he work successfully if he be perpetually disturbed by the pretensions of adverse claimants? He dare not incur great outlay of money for necessary machinery and labor for development, if uncertain, when he has reached compensating mineral, whether his expenditures and labor are to be enjoyed by an antagonist. Why should he not, therefore, have the most plenary and summary remedies for quieting his claim, which courts of equity are so peculiarly adapted to furnish? It was in response to this demand of justice that Mr. Justice Field, in Dahl v. Raunheim, 132 U. S. 262, 10 Sup. Ct. 75, said:

"It does not appear in the present case that a patent of the United States had been issued to plaintiff, but it appears that he has complied with all the proceedings essential for the issue of such a patent. He is, therefore, the equitable owner of the mine, and the government holds the premises in trust for him, to be delivered upon the payment specified. We accordingly treat him, so far as the questions involved in this case are concerned, as though the patent had been delivered to him. Being entitled to it, he has the right to ask a determination of any claim asserted against his possession which may throw doubt upon his title."

And we doubt not that it was the purpose, among other things, of the legislature of the state of Wyoming to emphasize this policy in enacting the following statute prior to the origin of this contention:

"An action may be brought by any person in possession, by himself or tenant, of any real estate against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse estate or interest." Rev. St. Wyo. § 2985.

Under this statute the supreme court of the state has held that a petition is sufficient which contains a general allegation that the petitioner is in the actual possession of the described premises, and that the defendant claims an estate or interest therein adverse to him. Durell v. Abbott, 44 Pac. 647. This action, therefore, could have been brought in the state court on a petition containing such allegations as the above case. And, where the requisite diverse citizenship exists, the action may be brought in the United States court, predicated of the local statute. Gaines v. Fuentes, 92 U. S. 10; Dennick v. Railroad Co., 103 U. S. 11; Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263; Chicot Co. v. Sherwood, 148 U. S. 529, 13 Sup. Ct. 695; Cowley v. Railroad Co., 159 U. S. 569, 16 Sup. Ct. 127. This is equally true in suits to quiet title. Holland v. Challen, 110

U. S. 15, 3 Sup. Ct. 495; Greeley v. Lowe, 155 U. S. 75, 15 Sup. Ct. 24; Harding v. Guice, 25 C. C. A. 352, 80 Fed. 162; Perego v. Dodge, 163 U. S. 165, 16 Sup. Ct. 971. As a suit to quiet title pertains to the inherent jurisdiction of courts of equity, it was competent for complainant to bring his action on the chancery side of the court. The statutory form of procedure is in aid and not exclusive of the right to proceed in equity.

The bill sets out all the facts which show compliance by the complainant with the prerequisites of the federal statute investing him with the right of possession to the land in controversy, and entitling him to enjoy that right undisturbed, and to have his title to the possession quieted against the pretended adverse claim of the defendant. But it is insisted by defendant that, as he had made application to the land-office department for a patent, pursuant to the provisions of section 2325, Rev. St., and the 60 days prescribed therein for publication of notice of such application had expired before the complainant adversed the application, the complainant is precluded from contesting his right to a patent. It does not appear from the averments of the bill that the 60-days notice was ever published, as required by the statute. But, assume that it was, this fact has no application to the instance where the adverse claim does not arise until after the expiration of the 60-days limitation, and the applicant for the patent has let his application lie dormant for a number of years without either paying the purchase money or doing the required work of $100 each year pending the application for patent. Enterprise Min. Co. v. Rico-Aspen Consol. Min. Co., 32 U. S. App. 75, 13 C. C. A. 390, and 66 Fed. 200, affirmed in 167 U. S. 108, 17 Sup. Ct. 762. The filing of the application for a patent does not suspend the obligation to keep up the required work where, without paying the purchase money, the claimant permits his application to sleep for years, as in this case. And "upon such failure to comply with these conditions the claim or mine upon which the failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made." Black v. Mining Co., 163 U. S. 450, 16 Sup. Ct. 1101.

The decree of the circuit court dismissing the bill is reversed, at the defendant's cost, and the cause is remanded, with directions to vacate the decree, with leave to the defendant to make answer to the bill within such time as the circuit court may direct, and for further proceedings in conformity with this opinion.