POORE ET AL., RESPONDENTS, *v.* KAUFMAN, APPELLANT.

(No. 3,024.)

(Submitted November 21, 1911.   Decided November 24, 1911.)|

[119 Pac. 785.]

*Mines and Mining—Quartz Locations—Representation Work—Duty to Perform—Patent—Adverse Claims—Waiver—Claims Arising After Period of Publication—Jurisdiction—Quieting Title.*

Quartz Locations—Representation Work—Duty to Perform.
    1.   The duty to perform the annual representation work on a quartz lode location continues until payment of the purchase price is made to the government, and failure in this regard subjects the claim to relocation.

Same—Patent—Adverse Claims—Waiver.
    2.   The provision of section 2325, United States Revised Statutes, that patent to a lode claim may issue where not any adverse claim has been filed in the proper land office during the period of publication of notice of application therefor, has reference only to a present tangible claim existing at some time during such period of publication, and failure to adverse within that time constitutes a waiver.

Same—Are Property.
    3.   A valid and subsisting mining claim is property in the highest sense of the term, subject to be sold, mortgaged and inherited, without infringing the paramount title of the government.

Same—Adverse Claims Arising After Period of Publication—Jurisdiction—Quieting Title.
    4.   Where an adverse claim to a lode location did not arise until after the period of publication had expired, the claimant properly invoked the aid of the district court in an action to quiet his title, as against the patent applicant, alleged to have been acquired through relocation upon failure of the applicant to perform the annual representation work pending patent proceedings.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by J. A. Poore and others against Louis Kaufman. From an order refusing to dissolve a temporary injunction, defendant appeals. Affirmed.

*Mr. Jesse B. Roote,* and *Mr. A. C. McDaniel,* for Appellant, submitted a brief; *Mr. McDaniel* argued the cause orally.

The land office of the United States has sole jurisdiction in the matter of the sale of public land unless Congress has provided otherwise, and in providing for sales of public lands, if Congress does not provide the method of sale, the land office has the right and power to sell the land under its rules and regulations. (*Catholic Bishop* v. *Gibbon,* 158 U. S. 155, 15 Sup. Ct. 779, 39 L. Ed. 931, 936.) Section 2326, United States Revised Statutes, provides for a suit to determine the right to possession to the ground in dispute when an adverse claim is filed. This is the only provision in the mineral statutes where courts are allowed to have jurisdiction before the issuing of a patent. To give courts jurisdiction there must be an application for patent, an adverse filed within sixty days after first publication of notice for patent and an action commenced within thirty days after adverse allowed. If no adverse is filed within time, no party has a right to go into a court to have determined the right to possession or title to ground, but under section 2325 he is relegated to the land office to file his protest or objections that the applicant has failed to comply with the law. The federal statutes have fixed one case where an action in a court may be commenced to determine the right to possession after application for patent, and by the rule, "*Expressio unius est exclusio alterius,*" no other action can be maintained. And under the same rule the jurisdiction of the land office is immune to invasion by courts. (*St. Paul etc. Co.* v. *Olson,* 87 Minn. 117, 94 Am. St. Rep. 693, 91 N. W. 294; *Brown* v. *Hitchcock,* 173 U. S. 473, 19 Sup. Ct. 485, 43 L. Ed. 772; *Cosmos Ex. Co.* v. *Gray Eagle O. Co.,* 190 U. S. 301, 23 Sup. Ct. 692, 47 L. Ed. 1064; *United States* v. *Schurz,* 102 U. S. 378, 26 L. Ed. 167; *Iron etc. Co.* v. *Campbell,* 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155, 160, 16 Morr. Min. Rep. 218; *Kansas City etc. Co.* v. *Clay,* 3 Ariz.

326, 29 Pac. 9; *Grandin* v. *La Bar,* 3 N. D. 446, 57 N. W. 241.) The land office is a *quasi*-judicial tribunal, and in the absence of specific provisions to the contrary, it has exclusive jurisdiction of the questions involved on an application for a patent for public lands. (*Warnekros* v. *Cowan,* 13 Ariz. 42, 108 Pac. 238; *Wight* v. *Dubois,* 21 Fed. 693; *United States* v. *Winona etc. Co.,* 67 Fed. 948, 958, 15 C. C. A. 96; *James* v. *Germania I. Co.,* 107 Fed. 597, 46 C. C. A. 476.) A statute of the United States cannot be affected by a state statute, and state statutes for the recovery of real property are not applicable in actions to determine the right of possession of United States lands. (*Lily M. Co.* v. *Kellogg,* 27 Utah, 111, 74 Pac. 518; *Steves* v. *Carson,* 42 Fed. 821, 16 Morr. Min. Rep. 12.)

It not appearing that an adverse was filed within time and that the case is brought within the statute, and within the exception specified by the statutes, the court has no jurisdiction in this action. The respondents cannot come into court for relief, but, if they are entitled to relief, they must proceed in the land office, where the law provides a method of relief. (*Wight* v. *Dubois,* 21 Feb. 693; *Neilson* v. *Champagne M. & M. Co.,* 119 Fed. 123, 55 C. C. A. 576, 22 Morr. Min. Rep. 438; *Golden Reward M. Co.* v. *Buxton M. Co.,* 79 Fed. 868, 873, 18 Morr. Min. Rep. 592; *Gwillim* v. *Donnellan,* 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348, 15 Morr. Min. Rep. 482; *Warnekros* v. *Cowan,* 13 Ariz. 42, 108 Pac. 238.)

*Mr. Chas. Mattison, Mr. M. J. Cavanaugh,* and *Mr. J. A. Poore,* submitted a brief in behalf of Respondents. *Mr. Poore* argued the cause orally.

In support of his contention that the district court had no jurisdiction to entertain an application for an injunction, or any proceedings in the action, cites a number of authorities, but a careful analysis of them fails to disclose a case which we consider directly in point; most of the assertions from such decisions cited in appellant's brief are *obiter,* and such generalities, when considered in connection with the facts of each case, cannot be said to state the law with reference to the facts in this

particular case; though, upon casual reading, it might be so considered. The idea that a person is barred if he has filed no adverse in the land office is based upon the theory that the publication of the sixty days' notice of the application is process to the whole world, and that everyone who has an adverse claim by reason of this notice has his day in court; but where a man acquires rights after this notice has expired, how can he be barred upon this theory? To bar him under such circumstances would be to deprive him of due process of law. (*Golden Rule* v. *Buxton Min. Co.,* 79 Fed. 875, 18 Morr. Min. Rep. 592.) The rights of the respondent to the Fair Trial Lode claim depend on a compliance with the laws of the state of Montana, as well as the forfeiture of the appellant, and in a protest before the land office these could not be considered, as only the acts of the applicant could be gone into; so that the respective rights of the parties could not be finally determined in such a proceeding. Mr. Lindley on Mines, section 731, says: "It is hardly necessary to suggest that parties relocating after the period of publication have no standing as adverse claimants. If, pending the patent proceedings, the applicant fails to perform the annual labor, the ground becomes subject to relocation; but after the period of publication has elapsed, such relocator cannot inject himself into the patent proceedings. His remedy is in the courts." (*Gillis* v. *Downey,* 85 Fed. 483, 29 C. C. A. 286, 19 Morr. Min. Rep. 253; *Cain* v. *Addenda Mining Co.,* 29 L. D. 62; *Cleveland* v. *Eureka No. 1 Min. Co.,* 31 L. D. 69; *Enterprise Min. Co.* v. *Rico,* 167 U. S. 108, 17 Sup. Ct. 762, 42 L. Ed. 96, 18 Morr. Min. Rep. 661.) Continuing, he says: "Necessarily such a relocation based on the original applicant's failure to do the annual labor must have been perfected prior to the culmination of the patent proceedings, and the issuance of the certificate of purchase." (*Neilson* v. *Champagne Min. Co.,* 119 Fed. 123, 55 C. C. A. 576, 22 Morr. Min. Rep. 438.) Pending the patent proceedings, and until certificate of purchase is issued, the annual labor must be performed, and a failure to do so subjects the land to relocation. (*Willitt* v. *Baker,* 133 Fed. 937; *South End Min. Co.* v. *Tinney,* 22 Nev. 19, 35 Pac. 91; Mor-

rison's Mining Rights, 14th ed.; p. 115.)    The Land Department has nothing to do with settling questions as to the performance of annual labor upon mining claims, nor of alleged relocation thereof by reason of failure to perform such expenditure, arising under section 2324 of the Revised Statutes. (*Gaffney* v. *Turner*, 29 L. D. 470; *Neilson* v. *Champagne*, 119 Fed. 123, 55 C. C. A. 576, 22 Morr. Min. Rep. 438; *Barklage* v. *Russell*, 29 L. D. 401.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 1, 1899, the defendant, Kaufman, made application to the local land office for a patent to his Little Spring quartz lode mining claim.    During the period of publication, an adverse claim, by Thornton and others, was presented and allowed, and suit commenced within thirty days (in May, 1899).    Proceedings in the court were carried on for several years.    On January 7, 1910, this court rendered its final decision (*Thornton* v. *Kaufman*, 40 Mont. 282, 135 Am. St. Rep. 618, 106 Pac. 361) ; on February 4 the *remittitur* issued, but was not filed in the district court until December 3, 1910.    On January 24, 1911, this action was commenced.    In the complaint the plaintiffs set forth the foregoing history, and allege that defendant, Kaufman, failed to do any annual representation work during 1903, 1904, or 1909; that, on January 8, 1910, they relocated the ground as the Fair Trial quartz lode mining claim; and that they have ever since been in the peaceful possession of the same.    They allege that the patent proceedings are still pending in the local land office; that Kaufman has not presented to the local land office a copy of the judgment in *Thornton* v. *Kaufman*, or paid to the land office the purchase price of the ground, or received a receiver's receipt, but that he is about to proceed to secure a patent to the ground in controversy.    The prayer is that the plaintiffs' title be quieted as against Kaufman, and for an injunction, restraining him from prosecuting the patent proceedings.    A temporary injunction was issued.    Thereafter, on February 16, 1911, defendant appeared and presented a demurrer

to the complaint and a motion to dissolve the temporary injunction. On February 25th the demurrer and motion were overruled, and this appeal is prosecuted from the order of the court, refusing to dissolve the injunction.

But a single question is presented for our determination, *viz.*: Has the district court of Silver Bow county jurisdiction to hear and determine the questions raised by the complaint? Appellant insists that these questions are exclusively for the determination of the Land Department, and this assertion is predicated upon the failure of these plaintiffs to adverse Kaufman's application for patent. However, a reference to the facts stated above discloses that plaintiffs' right to or interest in the property was not initiated until more than ten years after the period of publication of Kaufman's notice of application for patent expired. During the period of publication, therefore, these plaintiffs did not have any right upon which to base an adverse claim. They could not anticipate that such right would thereafter arise, and even if they could, such contemplated right would not give them standing as adverse claimants. In *Enterprise Mining Co. v. Rico-Aspen Min. Co.,* 167 U. S. 108, 17 Sup. Ct. 762, 42 L. Ed. 96, the court said: "The obvious contemplation of the law in respect to these adverse proceedings is that there shall be a present, tangible and certain right, and not a mere possibility." If, then, it is only a present, certain and tangible right which justifies an adverse claim, under section 2325, United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1429), clearly these plaintiffs could not bring themselves within the provisions of the law applicable to adverse claimants.

That neither the pendency of the proceedings for patent before the land office, nor the adverse suit by Thornton and others, relieved Kaufman from the necessity of doing the annual representation work upon his Little Spring claim is settled beyond [1] controversy. The duty to perform such work continued until payment of the purchase price is made to the government (2 Lindley on Mines, 2d ed., sec. 632; 1 Snyder on Mines, sec. 493; *South End Min. Co. v. Tinney,* 22 Nev. 19, 35 Pac. 89; U. S. Rev. Stats., sec. 2324, [U. S. Comp. Stats. 1901, p. 1426]);

and failure to perform such work subjects the claim to relocation. (*Black* v. *Elkhorn Min. Co.,* 163 U. S. 445, 16 Sup. Ct. 1101, 41 L. Ed. 221.)

It is alleged in the complaint, and for the purposes of this appeal will be treated as true, that Kaufman did not do any representation work at all during 1909. Under such circumstances, the ground was open to relocation, and plaintiffs, having relocated it by complying with the law, acquired the right to the peaceable possession of the ground, and to patent, if they follow up their claim, by complying with the law hereafter.

Appellant bases his claim that this action will not lie, upon the following provision of section 2325, above: "If no adverse claim shall have been filed with the register and receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists." Clearly this section refers [2] to a present, tangible claim, existing at some time during the sixty-day period of publication. In the *Case of P. Wolenberg,* 29 Land Dec. Dept. Int. 302, Secretary Hitchcock said: "The assumption, declared in section 2325 of the Revised Statutes, that no adverse claim exists in those instances where no adverse claim is filed in the local land office during the period of publication relates to the time of the expiration of the period of publication and to adverse claims which might have been made known at the local office before that time. It has nothing to do with adverse claims which are initiated subsequent to that time, and which could not, therefore, have been made known at the local office during the period of publication." As to such existing claim, an adverse must be filed in the land office, or the claim is waived. (*Hamilton* v. *Southern Nevada Gold etc. Min. Co.* (C. C.), 33 Fed. 562, 13 Saw. 113; *Lily Mining Co.* v. *Kellogg,* 27 Utah, 111, 74 Pac. 518; 27 Cyc. 607.)

But what shall be said with reference to the adverse claim which arises after the period of publication has expired? It is then too late to present to the land office an adverse claim. Counsel for appellant suggest that the only remedy available to

such adverse claimant is by protest to the Land Department against the issuance of patent to the original applicant, under the last clause of section 2325, above, which reads: "And thereafter no objection from third parties to issuance of a patent shall be held sufficient, except it be shown that the applicant has failed to comply with the terms of this chapter." A very able dissertation upon the meaning of that clause is found in *Wight* v. *Dubois* (C. C.), 21 Fed. 693, wherein Judge Brewer said: "I think all that it covers is the right to anybody to come in and enter his protest or objection; in other words, to say to the officers of the government that the applicant has not complied with the terms of the statute, and to insist that there shall be an examination by such officers to see if the terms have in fact been complied with. He does not appear as a party asserting his own rights; but if we may, so to speak, parallel these proceedings with those in a court, such an objector appears as an *amicus curiae*—a friend of the court—to suggest that there has been error, and that the proceedings be stayed until further examination can be had. Such a protest does not bring the protestant into court for the assertion of his own title or right; does not revivify rights lost by a failure to adverse. True, if the protest or objection is sustained, the proceedings will be set aside, new ones must be commenced, and then the objector may be in a position to assert his rights; but, if the protest or objection be not sustained, the objector, like an *amicus curiae,* has nothing more to say in the matter. In other words, the right to protest is not the right to contest. The latter is lost by the failure to adverse. The former remains open to everyone—holders of adverse claims, as well as others. But the protest is only to the officers of the government, challenges only the applicant's claims, and in no manner brings up for consideration any claims of the protestant. Such a protest can be made only before the Land Department, and, if there rejected, the protestant has no further standing to be heard anywhere. The protest cannot be made the basis of any litigation in the courts, for the courts are only open to those who have rights to assert; they sit for the determination of controversies. They do not, at the instance of stran-

gers, review the regularity of proceedings between parties who are competent to determine such regularity, and who do not themselves invite any judicial determination.'' That this construction of the statute is correct is manifest from a review of the several paragraphs of chapter 6 (sections 2318–2352, Rev. Stats. U. S. [U. S. Comp. Stats. 1901, pp. 1423–1442]).

If the Land Department had jurisdiction over conflicting claims between private individuals, and the machinery for determining such claims, there would never have been any occasion for referring adverse claims to the courts for adjudication. It is only because the Land Department cannot determine such claims that the aid of the courts is invoked. The Land Department has held uniformly that questions arising over the failure of an entryman to do the annual representation work, or the relocation of his claim by another for his failure to do such work, involve matters of conflicting rights between rival claimants with which the Land Department does not concern itself; but such questions are for the determination of the courts. In the *Case of P. Wolenberg,* above, the Secretary of the Interior further said: ''The annual expenditure of $100, in labor or improvements, required by section 2324 of the Revised Statutes, is solely a matter between rival or adverse claimants to the same mineral land, and goes only to the right of possession, the determination of which is committed to the courts, and not to the Land Department. In this respect, the requirement made by section 2324 is essentially different from that made by section 2325, which makes the expenditure of $500, in labor or improvements, a condition to the issuance of patent, and therefore a matter between the applicant for patent and the government, the determination of which is committed to the Land Department.'' To the same effect are *The Marburg Lode Mining Claim,* 30 Land Dec. Dept. Int. 202; *Cleveland* v. *Eureka G. M. & M. Co.,* 31 Land Dec. Dept. Int. 69.

In *Barklage* v. *Russell,* 29 Land. Dec. Dept. Int. 401, there was an attempt made to follow out the suggestion of appellant, in this instance, by protesting to the government against the issuance of patent. The protestant there alleged that the patent applicant

.had failed to do the annual representation work, and that he (protestant) had relocated the ground; but the protest was summarily dismissed, and Secretary Hitchcock said: ''The allegations of the protest amount to nothing more nor less than the assertion of a claim adverse to that of the entryman, Russell, and arising subsequent to the period of publication of the notice of the application for patent. The Land Department has nothing to do with questions as to the performance of annual expenditure upon mining claims, nor of alleged relocations thereof by reason of failure to perform such expenditure, arising under section 2324 of the Revised Statutes. These questions are solely matters between rival or adverse claimants to mineral lands, and go only to the right of possession of the land involved. The determination of that right, between such claimants, however, or whenever the adverse claim may be alleged to have had its origin, is committed by the mining laws to the courts alone.''

It appears, therefore, that a protest to the Land Department, based upon the allegations of plaintiffs' complaint herein, would not receive any consideration whatever. If the Land Department will not hear the plaintiffs, and the courts have no jurisdiction to hear them as appellant contends, they are remediless. But this cannot be. If their allegations are true, they have a valid, subsisting mining claim. Such a claim is property in [3] the highest sense of the term, subject to be sold, mortgaged and inherited, without infringing the paramount title of the government. (*Cobban* v. *Meagher*, 42 Mont. 399, 113 Pac. 290; *Manuel* v. *Wulff*, 152 U. S. 505, 14 Sup. Ct. 651, 38 L. Ed. 532.) According to the allegations of this complaint, plaintiffs' property will be injured by Kaufman's proceeding to secure patent to the same ground; and the courts of this state are open to afford a remedy for such injury, or to prevent it in a proper case. (Article III, sec. 6, Montana Constitution.)

Our conclusion is that, if an adverse claim is in existence at any time during the sixty-day period of publication, it must be presented to the land office, or it is waived. If such adverse [4] claim does not arise until after the period of publication has expired, the claimant may invoke the aid of the court, in

44 Mont.—17

the first instance, to quiet his title as against the patent applicant. This is the holding in *Gillis* v. *Downey*, 85 Fed. 483, 29 C. C. A. 286, approved in 2 Lindley on Mines, sections 696 and 731, and is, we think, clearly correct.

Some reliance is placed by appellant upon the decision of this court in *Murray* v. *Polglase*, 23 Mont. 401, 59 Pac. 439. So far as the decision in that case is concerned, it does not go further than to hold that these plaintiffs would not have been heard to intervene in the adverse suit of *Thornton* v. *Kaufman*, for the reason that they had not presented an adverse claim to the local land office. In the course of the opinion, this court, after determining that the interveners in that action had no standing in court, by way of suggestion, said: "If they have any right to the ground in controversy, they * * * must be relegated to the land office, where they may be permitted to show that the parties who may succeed herein have not complied with the law"—and in support of this is cited Lindley on Mines, 1st ed., section 758, where the same suggestion is to be found. The decision in *Murray* v. *Polglase* was rendered in 1899. In the second edition of Lindley on Mines, issued in 1903, the author adds to the suggestion above the following: "Or the relocator may pursue his remedy in the courts, regardless of the pendency of patent proceeding"—citing *Gillis* v. *Downey*, above. But, as shown by the decided cases, the Land Department has now finally adopted the policy that it will not consider a protest, based upon such grounds as plaintiffs here present, so that the suggestion made in *Murray* v. *Polglase* is now of no force.

The order of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.