MURRAY ET AL., PLAINTIFFS AND APPELLANTS, *v.* POL-
GLASE ET AL., DEFENDANTS AND APPELLANTS.

ADAMS ET AL., INTERVENORS AND RESPONDENTS.

[Nos. 1,170, 1,199.]

[Submitted October 24, 1899.   Decided December 18, 1899.]

*Mines and Mining—Adverse Claim—Intervention—Receiver's
Receipt—Fraud — Cancellation of Entry—Annual Repre-
sentation Work—Relocation.*

1. Revised Statutes U. S. Section 2326, and Act Congress March 3, 1881, amendatory
thereof, allow 60 days from the filing of an application for a patent to a mining claim
for the filing of adverse claims, and require suits to establish such adverse claims to
be brought within 30 days thereafter.  Code Civil Procedure 1895, Section 1322, pro-
vides that it is sufficient to confer jurisdiction upon the court, in an action to estab-
lish an adverse claim for a patent to a mining location, if it appears from the
pleadings that the application for the patent had been made, and the adverse claim
filed and allowed in the proper land office.  *Held*, that one who has not filed his
adverse claim under the statute cannot intervene in an action to determine adverse
claims to a location, though he claims an interest in the premises adverse to both
plaintiff and defendant.

2. An entryman of a mining claim, who makes final entry thereof, and obtains the
receiver's receipt therefor, showing he is entitled to a patent, is not relieved of the
necessity of doing the annual representation work where such receipt was obtained
by fraud.

3. The cancellation, by the authorities of the land office, of a receiver's receipt, adjudi-
cates the fact that the entryman obtained no title at all by his entry, and by such act
of the land office the entryman is deprived of the ability to claim any right under
said receipt.

4. Where a receiver's receipt, showing that the entryman of a mining claim is entitled
to the patent, is subsequently annulled for fraud practiced in obtaining it, and the
entryman has failed to do the annual representation work, the claim is subject to
relocation.

5. Where a receiver's receipt, under which plaintiff is seeking to establish an adverse
claim to a mining location, is shown to have been canceled, evidence of defendant's
adverse location and publication of notice are admissible in evidence.

*Appeal from District Court, Silver Bow County; William
Clancy, Judge.*

ACTION by James A. Murray and others against Jane Pol-
glase and others to establish an adverse claim to a mine
location, in which W. W. Adams and others intervened.

Judgment was rendered for intervenors, from which defendants appeal; and plaintiffs appeal from the judgment and an order denying a new trial.    Reversed.

## STATEMENT OF THE CASE.

On September 17, 1892, the defendants flled their application in the United States land office for a patent to the Ramsdell lode mining claim.    After notice was published, and within the time prescribed by law, the plaintiffs, Murray et al., filed their adverse claim in the land office, and began this suit.    The plaintiffs base their claim upon a prior location, described as the "Maud S. Lode Mining Claim," alleging ownership and right of possession, and ouster by defendants. The defendants join issue upon these averments, and then set up affirmatively that they were in possession of the ground in controversy long before plaintiffs made any claim thereto, and that, if plaintiffs ever made a location thereon, they had forfeited all right thereto by failure to do the annual representation work for the years 1887 and 1888.  Plaintiffs, in their replication, admit that they did no representation work upon the Maud S. claim for the years 1887 and 1888, but allege that they made a final entry of the land embraced therein in the land office on December 29, 1887, and obtained a receiver's receipt therefor showing that they were entitled to a patent. The defendants' location was made on January 1, 1888.    The location of the Maud S. claim was made by one of the plaintiffs and others on May 28, 1881.    Both claims cover the same ground.    A trial of the cause was had in the district court, and resulted in a judgment in favor of plaintiffs.    Upon appeal to this Court the judgment was reversed, and a new trial ordered (17 Mont. 455, 43 Pac. 505), for error by the trial court in excluding from the evidence decisions of the local land office, the commissioner of the land office at Washington, and the secretary of the interior, offered by the defendants, canceling and setting aside the receiver's receipt held by plaintiffs.    The final decision of the secretary of the interior was rendered June 1, 1892.    Before the second trial was had

in the district court, Walter W. Adams, Henry Muntzer, William Burton, Eduard Wegner and Charles Colbert made an application to the court for leave to intervene in the cause, claiming the ground in controversy, as against both plaintiffs and defendants, under a location of the same made by themselves on January 31, 1894, as the "Adverse Lode Mining Claim." They allege in their complaint in intervention that the plaintiffs had lost whatever right they acquired under the Maud S. location by failure on their part to do any representation work on the claim for the years from 1888 to 1893, inclusive, or to resume work thereon before January 31, 1894, the date of completion of the Adverse location. They also allege failure on the part of the plaintiffs to claim their rights by filing affidavit of claim under act of congress approved November 3, 1893. As against defendants, they allege that the receiver's receipt outstanding in the hands of plaintiffs on January 1, 1888, had withdrawn the land from the public domain; that it was not open to exploration and location by any one at that time; and that therefore defendants acquired no right to it by virtue of the Ramsdell location. Judgment is demanded that they be declared the owners and entitled to the possession of the ground as against both plaintiffs and defendants. The complaint was allowed to be filed over the objection of the plaintiffs and defendants, who preserved their exceptions.

At the trial the plaintiffs introduced in evidence the facts of their location, their location notice, and the receiver's receipt, and thereupon rested. The defendants introduced the records of the United States land office, showing the cancellation of this receipt, and then offered proof of their location, and notice recorded in pursuance thereof. Upon objection of all the other parties, this evidence was excluded, and thereafter the defendants took no further part in the trial than to enter their objections and preserve their exceptions. Plaintiffs and intervenors concluded their proofs, and the jury rendered a verdict for the intervenors. Judgment was accordingly entered in their favor under the prayer of their complaint. Plaintiffs

moved for a new trial, which was denied. Defendants have appealed from the judgment. Plaintiffs have appealed from the judgment and the order denying a new trial. The appeals were filed under separate numbers, but were heard and are decided together.

*Mr. George Haldorn* and *Mr. John W. Cotter*, for Plaintiffs and Appellants.

A location to be effectual must be good at the time it is made  The subsequent abandonment or forfeiture of the ground included therein would not inure to the benefit of the subsequent locator. (1 Lindley on Mines, Sec. 363; *Belt* v. *Meagher*, 3 Montana, 65, 104 U. S. 279, 285.) So long as an entry remains uncancelled, the land is withdrawn from the public domain, and no valid location can be made thereon. (*Whitney* v. *Taylor*, 158 U. S. 85 L. E. 906–908; *Sanders* v. *N. P. R. R.* 166 U. S. 616 L. E. 1139; *Belk* v. *Meagher*, 104 U. S. 279, L. E. 735; *Witherspoon* v. *Duncan*, 71 U. S. 210, L. E. 339; *H. & D. Ry. Co.* v. *Whitney*, 132 U. S. 357, L. E. 363; 1 Lindley on Mines, Sec. 363; Clark's Mineral Law Dig., page 239; *Nelson* v. *Big Blackfoot Mill Company*, 17 Mont. 553; *Newhall* v. *Sanger*, 97 U. S. 761; *DeLacey* v. *Northern Pac. R. Co.*, 72 Fed. 726; *Southern Pac. R. Co.* v. *Brown*, 75 Fed. 85, and numerous cases cited in opinion on page 90.)

The receiver's receipt issued to plaintiffs, having withdrawn the ground included therein from the public domain, as we submit, defendants' location was invalid and void at the time it was made, and hence they took no rights thereunder, and were not in a position to maintain an invalid location as against either the plaintiffs or intervenors in this action. It is contended by the defendants in this action that the plaintiffs cannot take advantage of an invalid entry, and that to permit them to do so in this case would be to permit them to take advantage of their own wrong. In this connection, in addition to the authorities cited in intervenors' brief on this point,

we call the attention of the Court to: *Whitney* v. *Taylor*, 158
U. S., pages 90–91; *Southern Pac. Ry. Co.* v. *Brown*, 75
Fed. page 90.

*Messrs. Forbis & Forbis* and *Mr. F. T. McBride*, for De-
fendants and Appellants.

*Mr. W. I. Lippincott* and *Mr. Wm. H. De Witt*, for Inter-
venors and Respondents.

   a.  A final receipt obtained from the land office even by
fraud is valid *prima facie*, and is voidable only and not void.

   b.  A final receipt obtained from the land office, even if
afterwards proved to be fraudulent, while it is outstanding the
land is not relocatable.

The final receipt was voidable and not void. The rules as
to void and voidable judgments we think apply to this final
receipt, for a final receipt is in the nature of a judgment. It
is the final determination of a competent tribunal, to wit, the
land office, upon a matter within its jurisdiction. It deter-
mined the rights of the parties upon a full hearing, and the
subsequent issuance of a patent upon such receipt, if it should
be issued, was formal. The United States simply retained
the legal title to be transferred in the course of the business
of the land office. It is perfectly clear that this judgment, to
wit, the final receipt, was not void. It is equally clear that
it was voidable because it was obtained by fraud. (Freeman
on Judgments, Sec. 117.) The distinction between a void
and voidable judgment is made clear in *Harvey* v. *Whitlatch*,
2 Mont. 55, and *Edgerton* v. *Edgerton*, 12 Mont. page 147.
The judgment in question, to wit, the final receipt, was abso-
lutely valid on its face. The only way by which it could be
attacked was in an action brought for that purpose and by
showing facts *aliunde* the record of the judgment. Let one
examine the final receipt and the whole record in the land
office by which it was obtained and nothing whatever could
appear in the least suspicious. It was only when, by a proper
proceeding, the facts of fraud in obtaining the receipt ap-

peared, that the receipt was set aside. Certainly no fraud appeared upon the record in the land office, for if it did the land office would not have issued the receipt. We may therefore declare that the final receipt was valid until it was attacked. It had not been attacked when the defendants located their Ramsdell claim. It was therefore then valid. Suppose, for example, that the final receipt was uncanceled on the day when this case was tried. Certainly it could not have been attacked on that trial for fraud. The final receipt when it was issued conclusively proved the regularity of all proceedings which led up to its issuance. (*McDonald* v. *Edwards*, 44 Cal. 330; *Witcher* v. *Conklin*, 84 Cal. 500.) It was conclusive until set aside in a direct proceeding for that purpose. Indeed that principle was announced on the former appeal in this case, 17 Mont. 460, where the Court says: "If this (final receipt) were unattacked it concluded the defendants."

"b" A final receipt, even if it be obtained by fraud, and even if it be afterward canceled for fraud, withdraws the land from the public domain, and while it is outstanding the land cannot be located by another. *Nelson* v. *Big Blackfoot Milling Company*, 17 Mont. 553, is in point. In deciding the Nelson case this Court relied upon *Whitney* v. *Taylor*, 158 U. S. 85. The question had frequently been before the Supreme Court of the United States, and in this case the Court reviewed many of the decisions. We will not cite those decisions, but will refer the Court to them as quoted in the Whitney case. We submit that this case is exactly in point, and is conclusive, for the reason that the Court holds that the land is withdrawn from the public domain by an entry, even if that entry is afterwards canceled for actual fraud. No case could be more clearly in point. On the same principle, we also refer the Court, without citing, to *Northern Pacific Railroad Company* v. *Sanders*, 166 U. S. 620; *Barden* v. *Northern Pacific Railroad Co.*, 154 U. S. 288. The leading and distinguished case of *Belk* v. *Meagher*, 104 U. S. 279, is also entirely in point. The same principle is held in the decisions of the land office. In *Smuggler Mining Company* v. *True*

*Worthy Lode,* 19 L. D. 356, it is held that "an adverse location made during the pendency of an order holding an original claim for cancellation gives the original locator no standing to be heard as against the right of a claimant." If such relocator may not be heard as against the right of the claimant, then *a fortiori,* he may not be heard as against the right of a third party against whom no charges of fraud can be made; and again, *a fortiori,* if a relocation cannot be made during the pendency of an order holding the original claim for cancellation, it certainly cannot be made when, as in the case at bar, there is not even any action pending in the land office looking to the cancellation of the final receipt. See, also, *American Hill Quartz Mine,* 5 C. L. O. 114. We have not these Land Office Decisions at hand and quote only from the syllabi in the digest. See, also, *Rose* v. *Richmond Mining Company,* 17 Nev. 25; Lindley on Mines, Sec. 363 and cases cited; *Worth* v. *Branson,* 98 U. S. 118.

A final receipt is equivalent to patent as to third parties. (*Aurora Hill Con. Min. Co.* v. *85 Min. Co.,* 34 Fed. 515; Lindley on Mines, Secs. 771, 773, 208.) We have endeavored to show that the final receipt itself, as well as a patent, withdraws the land from the public domain, and therefore the land is not locatable while the final receipt is outstanding. (*Taylor* v. *Whitney* and other cases above cited.) This principle, we believe, is firmly established. Then to that proposition we add the principle that the final receipt is equivalent to a patent, and therefore we may apply all the presumptions of fact and law attending the patent to the final receipt. Certainly it can never be contended that while a United States patent is outstanding upon a piece of land, the same could be located by another claimant. (Lindley on Mines, Sec. 777.)

Of course it is true that the patent may be impeached collaterally on the ground that there was no jurisdiction to issue it; and this brings us back to the principle heretofore discussed that a void patent or final receipt may be attacked collaterally. But it cannot be contended that this final receipt

is void. This matter is discussed hereinbefore. If a patent or final receipt cannot be attacked collaterally when the question arises collaterally in a lawsuit, then, *a fortiori*, it can not be attacked by a simple location notice filed upon the ground covered by the patent or a final receipt. Without further citations we submit to the Court the whole discussion of this subject by Judge Lindley and the authorities cited by him and also the authorities mentioned in the cases which we have cited. We believe that these citations cover the whole case and make it apparent that the premises were not open to location at the time when the defendants filed their notice of the Ramsdell claim, and that therefore the Ramsdell location was absolutely void.

The court did not err in allowing us to intervene. We believe it to be true, as we have heretofore stated, that this is a statutory action. That is to say, the statutes of the United States provide that an appropriate action shall be brought to determine a fact, and that fact is whether the plaintiff as an adverse claimant in the land office, or the defendant as an applicant for patent, or neither, is entitled to proceed for patent in the United States land office. ( *Wulff* v. *Manuel*, 9 Mont. 276.) Plaintiffs and defendants each here claim that we have no right to come into this court as intervenors because we had not filed an adverse claim to the application by defendant for patent. Ejectment was the remedy chosen by the plaintiffs as an appropriate one. An allegation of the filing of an adverse claim in the land office would certainly not be an allegation germain to the subject of ejectment. This Court seems to have held in *Mattingly* v. *Lewisohn*, 8 Mont. 263, that a plaintiff who is a land office adverse claimant must allege in the state court the filing of an adverse claim in the land office, but let it be remembered that the question in that case was only as to a plaintiff as an adverse claimant. But concede to the plaintiffs and defendants in this case the very most that they may claim under the Mattingly-Lewisohn case, still the later case of *Hoffman* v. *Beecher*, 12 Mont. 498, is adverse to their contention; according to this decision, it seems that even

a plaintiff need not make an allegation of having filed an adverse claim.   If not a plaintiff, then certainly not an intervenor, whose rights have been initiated since the time for filing adverse claims has expired.   The case of *Altoona Q. M. Co.* v. *Integral Q. M. Co.*, 114 Cal. 100, treats of this subject very fully.

Section 1322 Code of Civil Procedure does not forbid our intervention.   We submit that this section should be construed under the rule that, "In construing a statute we should observe the old law, the mischief and the remedy." For many years in this territory these suits were brought either in the form of ejectment or to quiet title.   In many cases there never had been an actual ejectment and for this reason facts could not be proved to bring the case within the technical rules of ejectment.   On the other hand if the party desiring to bring the action was not in possession he therefore would fail in an action to quiet title.   Just such a difficulty arose in *Wolverton* v. *Nichols*, 5 Mont. 89.   The same difficulty will be found in many of the older Montana cases. It was generally found that two different parties had located the same piece of ground.   Neither ever retained any *pedis possessio.*   They simply went upon the ground and made the locations and left the premises.   There were thus many cases where technically neither ejectment nor an action to quiet title would prevail.   We submit that section 1322 was intended to meet this class of cases and to provide that possession was not a material element in the case.   Furthermore the statute does not require that application for patent must have been made and an adverse claim filed.   The statute simply provides that if these facts do appear they are sufficient to give jurisdiction.   But in this case it does appear that an application has been made and an adverse claim filed; that is to say, the application by the defendant, and an adverse claim by the plaintiff.   Thus jurisdiction has been acquired over the premises and over the subject of the right to the land.   The case is properly in court where a defendant and plaintiff occupy the position of applicant and adverse

claimant.    Therefore the case being in court, we contend that the court may adjucate everything connected with the controversy, and that a part, of the controversy is that another party, to-wit: The intervenors are entitled to the land.    Even if it be held that the plaintiff must allege that he has filed an adverse claim in the land office, still we contend that the Act of Congress of March 3, 1881, confers upon the intervenors the right to come into this action.    There are three results which may be reached.    The verdict may be either in favor of plaintiff or defendant or neither of them.    This latter question is material in the case.    The intervenors' contention here is that neither plaintiff or defendant is entitled to the premises, because in fact intervenors own it.    Thus in addition to our contending for our own rights we are in effect a friend of the Court and a friend of the United States land office.

The great contention of the plaintiffs and defendants against us is that we should have filed an adverse claim in the land office.    In this connection it is pertinent to consider who may be adverse claimants within the provisions of Sections 2325 and 2326 U. S. R. S.    Adverse claimants certainly are those having adverse claims at the time of the sixty days' publication of notice.    No other person could file adverse claims during the period of publication.    We are not adverse claimants.    Our rights accrued in 1894, which was some years later than the publication.    We submit that *Enterprise M. Co.* v. *Rico-Aspen Con. M. Co.*, 161 U. S. 108, sustains our contention that it is not material to our right of intervention that we did not file an adverse claim in the land office.    Section 2325, R. S. U. S., after providing for an application for patent and the 60 days' publication of notice, states, "and thereafter no objection from third parties to the issuance of a patent shall be heard except it be shown that the applicant had failed to comply with the terms of this chapter."    But we sought to prove, and did prove to the satisfaction of the lower court, that the applicants had failed to comply with the terms of the chapter, and that they had totally failed to make any valid location of the ground.

Under the views expressed by Justice Miller (*Rose* v. *Richmond Min. Co.*, quoted in *Hoffman* v. *Beecher*, 12 Mont. 498) we submit that we have a right in this case before we were foreclosed or embarrassed by the issuance of a patent to one of the other claimants. If this case had been allowed to go on in our absence and it had been decided that plaintiffs could not take advantage of their own wrong, as above discussed, and that defendants were entitled to proceed to patent, the intervenors would certainly have been seriously embarrassed and put to great expense and trouble in establishing their rights in the United States land office.

Turning to our statute upon intervention, we find that it provides, Section 598, C. C. P.: ''Any person may, before the trial, intervene in an action or proceeding who has an interest in the matter in litigation, in the success of either of the parties or against both.'' We submit that we have a vital interest in the matter of this litigation and in the success of either of the parties, and that we have an interest against both. Applying Mr. Pomeroy's language (Code Remedies, Sec. 430), we submit that we are the only ones entitled to relief, that is to say, entitled to this land. Again we submit that if the original action had never been commenced, and that if we, as sole plaintiffs, had brought this action of ejectment, we would have been entitled to a judgment against the defendants. (*Altoona Q. M. Co.* v. *Integral Q. M. Co.*, 114 Cal. 100.) To state the whole matter shortly, the intervenors found these two parties contending for a piece of land which belonged to the intervenors. They therefore come in to establish their rights as against both parties.

Again it is stated in Section 429 of Pomeroy that the interest of the intervenor ''must be in the matter in litigation and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'' Certainly we gain by the effect of the judgment rendered in our favor because it establishes our rights as against both plaintiff and defendants. And we would lose by the effect of the judgment if it were in favor of either

plaintiffs or defendants, in that at least we would be obliged to resort to tedious and lengthy proceedings to establish our title. As the judgment now stands the whole contention is settled, and if either plaintiffs or defendants undertake to apply for patent and we adverse them, or if we apply for patent and either plaintiffs or defendants adverse us, we would have this present judgment to plead as *res adjudicatia*, for the reason that it would be the same contention between the parties. Again Mr. Pomeroy says, Section 423, Code Remedies: "In order that a person may avail himself of the permission given by the statute to intervene and may make himself a party to an action he need not be a necessary party." Even if we are not a necessary party here, we are a proper one, and our presence in this case concludes the whole controversy. Again Mr. Pomeroy says in the same section: "The ground of such an application (intervention) lies in the discretion of the court." We submit that in this case a wise discretion was exercised, a discretion which achieved the result of the maxim, "interest *reipublicae ut finis litium sit.*"

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

The records of the United States land department, introduced by defendants, show that the entry of the ground in controversy by the plaintiffs on December 29, 1887, was cancelled for fraud, upon the protest of some of the defendants and the predecessors of the others. The fraud alleged and established was that plaintiffs had represented to the register and receiver that they had done sufficient work upon the claim to entitle them to a patent, whereas they had not done more than one-half that amount. From these facts and the foregoing statement it will be seen that the parties, respectively, occupy these positions: The plaintiffs contend that, by their entry and the receipt issued to them, the land was withdrawn from the public domain, so that the defendants could acquire no rights by their location on January 1, 1888, notwithstanding no work was done by plaintiffs for the previous year, and

the entry was subsequently cancelled for fraud.  This withdrawal, they say, was effective to protect them against a location by any one else until the receipt was finally cancelled on June 1, 1892, and that when this occurred they could resume work, and thus retain their original right.  The defendants insist that, as the entry was void, because fraudulently made, the plaintiffs were not, even during the existence of the receipt, excused from doing the necessary work to prevent a forfeiture, and that a cancellation of the entry inured to their benefit, so as to give them a valid claim to the ground under their location.  The intervenors support the contention of the plaintiffs against the claim of the defendants, but maintain that their claim is good as against plaintiffs, because of a forfeiture incurred by plaintiffs in 1893.  The trial court sustained the contention of the plaintiffs as against defendants, thus excluding defendants from the case, leaving only the question of the forfeiture of 1893 to be tried between the plaintiffs and the intervenors.  Both plaintiffs and defendants contend that the intervenors have no rights in this case. These contentions require the solution of two questions: (1) Did the court err in permitting the intervention? (2) Assuming the defendants location to be otherwise valid, did they acquire any right thereunder by virtue of the cancellation of plaintiffs' entry ?

. 1.  We are of the opinion that the trial court erred in permitting the intervention.  Actions of this kind are brought under Section 2326 of the Revised Statutes of the United States, and the Act of Congress of March 3, 1881, amendatory thereof.  The form of the action and the mode of procedure are regulated by the same rules and controlled by the same statutes that apply to ordinary actions in the state courts.  ( *Wolverton* v. *Nichols*, 5 Mont. 89, 2 Pac. 308; *Milligan* v. *Savery*, 6 Mont. 130, 9 Pac. 894; *420 Min. Co.* v. *Bullion Min. Co.*, 9 Nev. 240); but the ultimate question to be determined is, which of the parties is entitled to a patent?  The action may be in ejectment, or a suit to quiet title, according to the position of the parties at the time suit is

brought; but the ultimate purpose of the suit must be kept constantly in view, so that the judgment may be so framed as to accomplish that purpose. *Wolverton* v. *Nichols, supra,* was reviewed by the Supreme Court of the United States. (119 U. S. 485, 7 Supreme Court 289, 30 L. Ed. 474.) That court, conceding the right to the territorial court to try the case under the statutes of the territory applicable to the form of action therein adopted, reversed the judgment of the trial court on the ground that it misinterpreted the facts proved by the plaintiffs in support of their case. In speaking of the purpose of the action, however, the court said: "The proceedings in this case commenced by the assertion of the defendants' claim to have a patent issue to them for the land in controversy. The next step was the filing of an adverse claim by the plaintiffs in the land office, and the present suit is but a continuation of those proceedings, prescribed by the laws of the United States, to have a determination of the question as to which of the contesting parties is entitled to the patent. The act of congress requires that the certified copy of the judgment of the court shall be filed in the land office, and shall be there conclusive. And we must keep this main purpose of the action in view in any decision made with regard to the rights of the parties." In *Garfield Mining Co.* v. *Hammer,* 6 Mont. 53, 8 Pac. 153, Mr. Justice Galbraith, for the court, said: "Now, although the courts of this territory, in determining the title to mining claims where there is a dispute in relation thereto in the land office, have adopted the forms of action by which title to land is tried, which may be either by the action of ejectment or to quiet title, yet the real question to be determined is, who is entitled to the patent from the United States government to the mining claim in controversy; or, in other words, who has become the purchaser of the mining claim, and devested the title of the government thereto, by complying with the requirements of the law of congress relative to acquiring title to mineral lands?" Again, this court, in *Hoffman* v. *Beecher,* 12 Mont. 489, 31 Pac. 92, after quoting the foregoing language with

approval, said: ''An analysis of the issues in the case at bar demonstrates the purposes for which the parties are engaged in this litigation, and that the adverse claim is the foundation of the action, and that appropriate relief will be granted upon the ultimate facts.'' In keeping with this view of the ultimate purpose to be accomplished, it has grown to be the inveterate practice in this jurisdiction to require the pleadings in such cases to contain allegations showing that the court has jurisdiction to proceed with the case, and so enabling it intelligently to reach a determination of the question at issue. Accordingly, in *Mattingly* v. *Lewisohn*, 8 Mont. 259, 19 Pac. 310, it was held by this Court that a complaint in an action to establish an adverse claim for a patent was fatally defective, in that it failed to allege that plaintiff had filed his adverse claim in the land office within the 60 days allowed by section 2326, *supra*, and that the suit was brought within 30 days thereafter. The allegations were held to be necessary, because the plaintiff must prove these facts in order to have any standing in Court. If he must prove them, he must necessarily allege them. Doubtless if the complaint contained allegations sufficient in other respects, the court would judicially know whether the suit were brought within 30 days after the filing of the adverse claim; but, in any event, the fact must appear from the face of the record. And this is not an unreasonable or unnecessary requirement, because its observance prevents conflict of action between the state court and the officers of the land department, and enables the court to know whether its judgment thus sought, often through tedious and expensive litigation, will, in the end, be effective for any purpose; for, if the suit is not instituted within the statutory time, the officers of the land department cannot give the judgment any effect whatever, even if it be against the applicant for patent. The rule of *Mattingly* v. *Lewisohn* has been uniformly observed in this state, as an examination of the original records in *Wulf* v. *Manuel*, 9 Mont. 279, 23 Pac. 723, *Hoffman* v. *Beecher*, *supra*, and other cases will show. In *McKay* v. *McDougal*, 19 Mont. 488, 48 Pac. 988, it was ex-

pressly approved.    The rule also finds expression in Section 1322 of the Code of Civil Procedure of 1895; for it is there provided that "it is sufficient to confer jurisdiction upon the court, if it appears from the pleadings that the application for a patent has been made, and an adverse claim thereto filed and allowed in the proper land office."    Whether the form of action is changed in other respects by this provision or not, it seems clear that the provision itself is, in the particular here considered, a statutory declaration of the rule always observed by this Court.

If it is necessary that these allegations be made in the pleadings, then no one who cannot make them (that is, no one who has not filed his adverse claim under the statute) has any right to maintain a suit against the applicant, and thus delay the issuance of the patent.    It is only by virtue of their compliance with the law in this particular that the plaintiffs have obtained standing in Court; but that they did so, and have thus delayed the issuance of patent until long after the time for filing adverse claims has expired, is no reason why the intervenors should be permitted to interfere and litigate their claims with the parties.

Counsel for the intervenors cite Section 589 of the Code of Civil Procedure, which provides:    "Any person may, before the trial, intervene in an action or proceeding who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both."    They also cite a part of section 430 of Mr. Pomeroy's Code Remedies, construing the foregoing provision, viz.:    "The intervenor's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought; or, if the action had first been brought against him as the defendant, he would have been able to defeat the recovery in part at least."    They insist that they have an interest adverse to both parties herein, and that under this provision of the statute, as interpreted by Mr. Pomeroy, they should be allowed to liti-

gate their rights in this case. But, under the rule of pleading heretofore seen to be applicable to suits of this character, they do not and cannot make the allegations or the proof necessary to give them any standing in court whatever. If they have any right to the ground in controversy, they cannot enforce it through the medium of an intervention in this action, but must be relegated to the land office, where they may be permitted to show that the parties who may succeed herein have not complied with the law. (Lindley on Mines, Sec. 758; *Mt. Blanc Con. G. Mining Co.* v. *Debour*, 61 Cal. 364.) The principle of the case last cited we think the correct one, notwithstanding an intimation to the contrary in *Altoona Quicksilver Min. Co.* v. *Integral Quicksilver Min. Co.*, 114 Cal. 100, 45 Pac. 1047. Counsel also cite *Enterprise Min. Co.* v. *Rico-Aspen Consol. Min. Co.*, 167 U. S. 108, 17 Sup. Ct. 762, 42 L. Ed. 96, as conclusive upon the point that the filing of an adverse claim was not necessary to give them the right of intervention. The case is not in point. It involved a controversy between the patentee of a mining claim and the owner of a tunnel site as the ownership of veins intersecting the line of the tunnel. The mining claim was the junior location, and was parallel with the course of the tunnel. At the time patent for the mining claim was applied for, it was not apparent that it covered any lead that would be cut by the tunnel. No adverse claim was made by the tunnel site owner. Subsequently it developed that the claim interfered with the tunnel site owner's rights. Under these circumstances, it was held that the tunnel site owner lost no rights by failing to file an adverse claim, because the conflict was not then known, and that his rights were superior to the rights under the junior claim.

2. The answer to the second question will be reached when we have determined what obligation, if any, rested upon plaintiffs to do the representation work during the year 1887. Were they relieved from the necessity of doing it by the receipt obtained by fraudulent representations to the authorities of the land office? The contention of the plaintiffs is that they

were. They proceed upon the assumption that after the officers of the land department have examined into the application for a patent, have determined that the applicant is entitled to purchase, have accepted his money in payment for the land and issued to him a certificate of purchase, he is vested with the full equitable title thereto. The land is then withdrawn from the mass of the public lands, and, no matter what infirmity may inhere in the proceedings by which he obtained his certificate, no one else can acquire any right to the land, as against him, so long as he holds the certificate. A fraudulent certificate, they say, is just as effective to preserve their rights as an honest one.

There is no doubt that when the entryman has complied with the law in good faith, and has been recognized by the government as a purchaser, he is regarded, as to third persons and the government, the equitable owner of the land. As such, he is liable to pay taxes on it, the same as upon his other property. (*Carroll* v. *Safford*, 3 How. 441, 11 L. Ed. 671; *Witherspoon* v. *Duncan*, 4 Wall. 210, 18 L. Ed. 839.) He is to be treated as the owner. In *Witherspoon* v. *Duncan*, after asserting the power of congress to dispose of the public land either by sale or donation, the court proceeds: "In either case, when the entry is made and the certificate given, the particular land is segregated from the mass of the public lands, and becomes private property. In the one case the entry is complete when the money is paid; in the other, when the required proofs are furnished. In neither can the patent be withheld, if the original entry was lawful." The effect of an entry of public land has also often been considered in the construction of grants by the United States in aid of railroads, where the grant contains a reservation or exception in favor of homestead, pre-emption, or other claims which had attached before the definite location of the line or route of the road. It has always been held by the federal courts, except as hereafter noted, that, as the grant becomes effective only upon the definite location of the line of the road, all claims which have attached to lands within the limits of the grant prior to that

time, whether valid or not, come within the exception, and are reserved from the operation of the grant. (*Hastings & Dakota Railroad Co.* v. *Whitney*, 132 U. S. 357, 10 Supreme Court 112, 33 L. Ed. 363; *Kansas Pacific Railway Co.* v. *Dunmeyer*, 113 U. S. 629, 5 Supreme Court 566, 28 L. Ed. 1112; *Whitney* v. *Taylor*, 158 U. S. 85, 15 Supreme Court 796, 39 L. Ed. 906; *N. P. Railroad Co.* v. *Sanders*, 166 U. S. 620, 17 Supreme Court 671, 41 L. Ed. 1139; *So. Pac. Railroad Co.* v. *Brown*, 21 C. C. A. 236, 75 Fed. 85.) The later case of *N. P. Railroad Co.* v. *De Lacey*, 174 U. S. 622, 19 Supreme Court 791, 43 L. Ed. 1111, however, modifies the rule of the earlier cases cited, so that the exception is held not to apply to pre-emption claims where the claimant has failed to make final proof and payment within the time provided by law. Such claims, though of record in the land office, are held to have been forfeited by operation of law. As to other classes of claims, the rule appears to remain unchanged. Counsel for plaintiffs cite these cases, and *Carroll* v. *Safford*, and *Witherspoon* v. *Duncan*, *supra*, as conclusive of their contention. We do not think they are. The cases of *Carroll* v. *Safford*, and *Witherspoon* v. *Duncan*, proceed upon the obvious principle that one who has purchased lands in good faith from the government, and holds the evidence of his purchase, is, as to the government and third persons, the equitable owner of them; and that he cannot avoid his duty to the state simply because he has not been vested with the legal title. The rule would be the same, however, if his title were fraudulent. So long as he stands as the apparent owner claiming the land, the obligation is the same. But his duty to the state, under such circumstances, would not prevent the government, or perhaps a person standing in its place, from avoiding his claim by showing it to be fraudulent and unfounded. The plaintiffs in this case were doubtless liable to pay taxes upon the Maud S. claim so long as they remained the apparent owners of it, though it be conceded that they had no title whatever. In our opinion, there is also a clear distinction to be drawn between the relative positions and

rights of the parties in this case, and those of the parties in controversies arising out of the construction of railroad grants. A grant of this kind is a specific grant *in præsenti*, vesting and becoming certain upon the definite location of the line of the road. When the line becomes fixed, the corporation is vested with title to all the designated lands within its limits, other than those expressly excepted or reserved. These exceptions are specifically mentioned, including, among others enumerated, those to which "the right of pre-emption or homestead settlement has attached," or those not "free from pre-emption or other claims or rights," and are held to be excluded from the operation of the grant by the very fact of their existence at the time the grant attaches, without regard to whether they are fraudulent or otherwise, unless forfeited by operation of law. (*Northern Pac. Railroad Co.* v. *Majors*, 5 Mont. 111, 2 Pac. 322; *Northern Pac. Railroad Co.* v. *Lilly*, 6 Mont. 65, 9 Pac. 116; *U. S.* v. *Northern Pac. Railroad Co.*, 6 Mont. 351, 12 Pac. 769; and also cases in last citation.) It was not contemplated by congress at the time the grant was made that, in every instance where a claim had attached to land within the limits of the grant, the settler or other claimant should be put to the trouble or expense of showing his good faith or the validity of his claim, as against the railroad company. (*Kansas Pac. Railway Co.* v. *Dunmeyer*, and *Hastings & Dakota Railroad Co.* v. *Whitney*, *supra.*) These questions were left to be adjusted between the government and the claimants. The claims came within the exceptions expressly enumerated, and were therefore excluded from the operation of the grant. On the other hand, the parties plaintiff and defendant in this case stand as two rival purchasers, each claiming to be entitled to the land in question. The latter have confessedly acted in good faith in the performance of the required conditions; while the former, though admitting their fraud, nevertheless insist that, because they thereby induced the government to make them the apparent purchasers, they are excused from the performance of these conditions. Though they were detected in their

fraud, and the government declared them without title, this fact, they say, did not affect their right to claim the land under the receipt while they held it, and thus to exclude others from acquiring any right thereto.

It is conceded on both sides that when a locator, having complied with the law, in good faith completes his proof and pays the purchase money, his equitable title is complete. The conditions are then all performed, and no further obligation rests upon the applicant to expend money in doing the annual representation work. Even if the patent is delayed for any reason, still when it is finally issued it is evidence of the regularity of all previous acts, and relates back to the date of the original entry, so as to cut off intervening rights. Indeed, the decisions are uniform on this question wherever it has been considered. (*Deno* v. *Griffin*, 20 Nev. 249, 20 Pac. 308; *Aurora Hill Consol. Min. Co.* v. *85 Min. Co.*, (C. C.) 34 Fed. 515; *Benson Mining & Smelting Co.* v. *Alta Mining & Smelting Co.*, 145 U. S. 428, 12 Supreme Court 877, 37 L. Ed. 762; Barringer & Adams Law of Mines & Mining 265; *In re Harrison*, 2 Land Dec. Dep. Int. 767.) But we have not been able to find any adjudicated case upon the exact question presented here. Counsel have cited none, and we therefore conclude that there is none. This fact, however, is to be noted: That in all the cases cited, except those arising out of railroad grants, the presumption has obtained that the entry in question was made in good faith, and in each one of them the entry was a subsisting one at the time the controversy arose. Counsel for defendants have cited *U. S.* v. *Steenerson*, 1 C. C. A. 552, 50 Fed. 504. In that case one Hanson had made a pre-emption entry upon public land, and on November 1, 1884, made his final proof, and received a certificate of purchase. He at once conveyed the land to Steenerson, one of the defendants. During the winter of 1885–6 the firm with which Steenerson was associated cut from the land 754,000 feet of logs, and had them in their possession. In April, 1886, the United States brought suit in replevin to recover the logs, claiming that the title to the land, and there-

fore to the timber, had not vested under the entry, on account of fraud practiced by Hanson in making it. During the pendency of the suit, and before the trial, the entry was cancelled by the commissioner of the land office on the ground that the entry was not made in good faith for actual settlement, but for the purpose of enabling Steenerson and his associates to strip the land of the timber thereon. The circuit court of appeals sustained the action. We quote from the opinion by Judge Shiras: ''The final certificate or receipt acknowledging payment in full, and signed by the officers of the local land office, is not in terms, nor in legal effect, a conveyance of the land. It is merely evidence on behalf of the party to whom it is issued. In a contest involving the title to land, wherein a person claims adversely to the United States, it is open to such claimant, notwithstanding the legal title remains in the United States, to prove that, by performance on his part of the requisite acts, he has become the equitable owner of the land, and that the United States holds the legal title in trust for him; but as the claimant in such case has not received a patent or formal conveyance, and has not become possessed of the legal title, he is required to show performance, on his part, of the acts which, when done, entitle him, under the law, to demand a patent of the land. When evidence of this kind is offered on behalf of the claimant, it is open to the United States to meet it by proof of any fact or facts which, if established, will show that the claimant has not become the real owner of the realty. If it be true, in a given case, that the entry of the land was not made in good faith, but in fraud of the law, certainly it cannot be said that the claimant has become the equitable owner of the land, and that the United States is merely a trustee holding the legal title for his benefit. Fraud vitiates any transaction based thereon, and will destroy any asserted title to property, no matter in what form the evidence of such title may exist.'' The case is not in point upon the question here considered, but it is suggestive, in that the court emphasizes the necessity resting upon the entryman to perform in good faith all the conditions required

by law before he makes the entry.    These are conditions precedent, and without the performance of them in good faith no title vests.    The cancellation of plaintiffs' receipt adjudicated the fact that they obtained no title at all by their entry.    By this judgment of the authorities of the land office they were deprived of the ability to claim any rights under it.    They were left with just such rights as they had at the time they obtained it.    If they chose to rely upon it as evidence of their title, and then forbore to preserve their rights by doing the acts necessary to preserve them, they are not now in a position to assert that they have lost nothing.    They stand in the same position as they would have stood on January 1, 1888, if they had not obtained the receipt at all.    They cannot be heard to say that during the time the receipt was outstanding the land was withdrawn from the mass of public lands, and that defendants acquired no rights under their location.    Plaintiffs' rights were forfeited, and the Maud S. claim was subject to relocation at the time the Ramsdell claim was located.    To hold otherwise would be to lend assistance to the fraud attempted by plaintiffs, and which would have been successful but for its exposure made by defendants and their predecessors.    It would permit them to profit by their own misconduct, in violation of the principle expressed in the wholesome maxim, *"Nemo allegans suam turpitudinem est audiendus."*    We are not to be understood as holding that the plaintiffs have no rights in any event.    We speak upon the facts in the record before us.

The trial court refused to permit the defendants to introduce the notice of location, and the facts upon which it was based, on the ground that there had been no forfeiture of the Maud S. claim.    This was error.    If upon another trial, however, it should appear that the acts done by the defendants on January 1, 1888, did not amount to a valid location, they would be in no position to take advantage of plaintiffs' forfeiture, and plaintiffs would be entitled to a judgment against them.

Nor are we to be understood as dissenting from the rule of

the cases cited in the former part of this opinion, touching the force and effect of a certificate of purchase from the United States. The language used in those cases is very broad and sweeping, but is applicable only to the facts of those particular cases. Such a receipt is not open to collateral attack in the courts in controversies arising between rival claimants to lands covered by them. This case is an exceptional one, and is decided upon its own peculiar facts, under the principles applicable to them.

While we feel satisfied to rest our decision upon the reasons already given, there is another question involved which requires a brief notice. The opinion rendered on the former appeal in this case concludes thus: "We are therefore of opinion that the certified copies of the register and receiver, the commissioner of the general land office, and the secretary of the interior should have been admitted in evidence. It was error to exclude them, either for the reasons expressed by the court, or those argued by counsel. These documents were material to defendants' case. Plaintiffs had proved a receiver's receipt for the land in controversy. If this were unattacked, it concluded the defendants. To avoid this result, it was material to defendants to show that this receiver's receipt did not exist, and that it, with its force and power, had been destroyed by the cancellation of the same by the officers of the land department having jurisdiction over that subject." This conclusion states the decision of this Court of the only question determined. The sole purpose for which the evidence is competent is to establish the fact that plaintiffs forfeited their rights on January 1, 1888. It thus opens the way for defendants to introduce the proof of their location. That decision was therefore a determination, indirectly, that the Maud S. claim was forfeited by the failure of plaintiffs to represent their claim in 1887. It is, therefore, the law of this case, and binding on us. (*Daniels* v. *Andes Insurance Co.*, 2 Mont. 500; *Palmer* v. *Murray*, 8 Mont. 174, 19 Pac. 553; *Kelley* v. *Cable Co.*, 8 Mont. 440, 20 Pac. 669; *Davenport* v. *Kleinschmidt*, 8 Mont. 467; *Maddox* v. *Teague*,

18 Mont. 512, 46 Pac. 535; *Priest* v. *Eide*, 19 Mont. 53, 47 Pac. 206, 958.)

The judgment herein in favor of the intervenors against the plaintiffs and defendants, and the order denying plaintiffs' motion for a new trial, are reversed, and the cause is remanded, with directions to the district court to grant a new trial. It is further ordered that the defendants recover of the plaintiffs and intervenors all costs incident to defendants' appeal herein, each being liable as against the other for one-half thereof, and that the plaintiffs recover of the intervenors all costs incurred both upon their motion for a new trial and upon their appeal.

*Reversed and remanded.*

