[Civil No. 1309.   Filed January 14, 1914.]

[137 Pac. 871.]

# J. E. SHANK and CHARLES FRANCEN, Appellants, v. R. J. HOLMES, Appellee.

1. APPEAL AND ERROR—STRIKING BRIEFS—EFFECT.—Though appellant's opening brief be stricken from the record, the record would still have to be considered for manifest and fundamental error.

2. PLEADING—ADMISSION.—New matter alleged in the cross-complaint which was not denied is deemed admitted.

3. PUBLIC LANDS—RULE OF DECISIONS—DECISIONS OF GENERAL LAND OFFICE.—The decision of the general land office canceling an entry of public lands is binding upon the courts when it becomes final.

4. MINES AND MINERALS—ENTRY OF MINING LANDS—SURVEY.—The official survey of land entered as a mining claim may serve for a second application after the cancellation of the first entry; the cancellation of the first entry in which the survey was a part not affecting it, or prohibiting the use of a copy in a subsequent application for a patent for the same premises.

5. MINES AND MINERALS—CANCELLATION OF ENTRY—EFFECT.—A cancellation by the general land office of an entry for a mining claim is conclusive that the entryman failed to comply with all the conditions of entry, such as furnishing a proper affidavit of continuous posting of notice as required by Revised Statutes of the United States, section 2325 (U. S. Comp. Stats. 1901, p. 1429).

6. MINES AND MINERALS—CANCELLATION OF ENTRY.—The cancellation of a mineral entry by the general land office determines that the entryman obtained no title by his entry, and the fact that money sufficient to purchase the land remained on deposit after cancellation would not give the entryman any equitable rights in the land, nor would he acquire any title by procuring an official survey thereof.

7. MINES AND MINERALS — CANCELLATION OF ENTRY — SUBSEQUENT APPLICATION.—Defendant, by making an application for a patent to mineral lands after cancellation of a former entry by him, accepted and acquiesced in the decision of the general land office cancelling his former entry; his right to the land after such cancellation depending upon location made under the laws.

[As to cancellation of entry of public land without notice to entryman, see note in 75 Am. St. Rep. 880.]

8. MINES AND MINERALS—MINERAL CLAIMS—"ABANDONMENT"—"FOR-
FEITURE."—An "abandonment" of mining claims held by location
takes place where the locator voluntarily leaves his claim to be
appropriated by another, without any intention of again claiming
it in the future; while a "forfeiture" occurs by operation of law,
without regard to the appropriator's intention, when he fails to
comply with the statutory conditions.

9. MINES AND MINERALS—MINERAL CLAIMS—PATENTS—PERFORMANCE
OF CONDITION.—One who entered the mineral lands as a locator, by
failing to make the expenditure for the year 1911, forfeited his
claim thereto where another entered a claim thereto in 1912, and
completed his location.

[As to forfeiture or abandonment of mining claims, see note in
87 Am. St. Rep. 403.]

APPEAL from a judgment of the Superior Court of the
County of Mohave. Carl G. Krook, Judge. Reversed and
remanded.

STATEMENT OF FACTS BY THE COURT.

The appellee, R. J. Holmes, on March 21, 1912, made ap-
plication to the local United States land office for a mineral
patent for the land and premises embraced within the Home-
stake and Jack Pot lode mining claims situate in the San
Francisco mining district, in Mohave county, state of Ari-
zona. During the 60 days' period of the publication of the
notice of such application, the appellants filed an adverse
claim in the land office, claiming the exclusive right to the
possession of the premises covered by the application under
a mineral location initiated by them on February 23, 1913,
as the locators of the Lucky Budge and Lucky Chance min-
ing claims. Within 30 days after the adverse claim was filed
in the land office, this action was commenced in the superior
court of Mohave county in support thereof. The cause was
tried to the court, without a jury, upon an agreed statement
of facts in the form of a stipulation of counsel and a letter
of the assistant commissioner of the general land office.
Judgment was rendered for the defendant, from which plain-
tiffs appeal. Other facts are stated in the opinion.

Mr. Charles W. Herndon, for Appellants.

Mr. E. S. Clark, for Appellee.

CUNNINGHAM, J.—The appellee moved to strike appellants' opening brief, for the reason ·the brief was not filed within the time stipulated. The abstract of the record was filed February 28, 1913. Appellants had until March 30, 1913, in which to file their brief under the rule, and by stipulation of counsel their time was extended for a period of 20 days additional, or until April 19, 1913. The brief was filed April 21, 1913. The prayer of the motion is that the brief be stricken and the appeal dismissed for the reason stated. The brief of counsel in support of the motion discusses the question of the insufficiency of the assignments of error to raise any question for consideration by this court on the appeal. If the motion be considered one to strike the brief, for the reason it was not filed in time, as stated and prayed for in the motion, or if the motion be considered as going to the sufficiency of the assignments of error as discussed in the briefs of the parties, granting the motion would not work a dismissal of the appeal. The record would remain before this court for consideration as to manifest and fundamental error therein. *Kinney* v. *Neis*, 14 Ariz. 318, 127 Pac. 719.

The assignments of error are too general to raise any question for consideration on this appeal, with the possible exception of the first, viz.: "The court erred in its findings of fact, contained in the judgment, as to paragraph 9 thereof, for the reason that the same is contrary to the stipulation of the facts; the said paragraph 9 of said findings of fact being contrary to the law, and to the stipulation as to the facts." Paragraph 9 of the findings of fact follows substantially the language of the stipulation of facts as to what the appellee would testify to if present. For that reason, it cannot be said that such finding is contrary to the stipulation, or contrary to the evidence. Upon the other hand, the finding is supported by the evidence.

If the judgment is responsive to the pleadings, and is supported by the findings of facts made and filed by the court, it must be affirmed.

The pleadings consist of the amended complaint, defendant's plea in abatement, general demurrer, and answer and a pleading designated a cross-complaint.

The amended complaint alleges in brief that plaintiff, J. E. Shank, is a citizen of the United States, and that plaintiff Charles Francen had declared his intention to become such citizen prior to February 23, 1912; that all the parties are residents of Mohave county; that on the twenty-third day of February, 1912, the plaintiffs entered upon the ground and premises formerly located as the Homestake and Jack Pot lode mining claims, situated in the San Francisco mining district, in Mohave county, Arizona, and located said premises as the Lucky Budge and Lucky Chance lode mining claims; that they discovered mineral therein, and duly performed all the necessary acts required by law within the time required by law to the due and complete location of such mining claims—the facts of location are sufficiently set forth in detail. It is then alleged that prior to December 8, 1910, the defendant made application for a patent for the Homestake and Jack Pot mining claims, and the ground covered by such application for patent is the same ground and premises covered by the Lucky Budge and Lucky Chance located by plaintiffs, and none other; that on September 15, 1911, said mineral entry for the said Homestake and Jack Pot mining claims was canceled by the commissioner of the general land office; that subsequent to the cancellation of said mineral entry on September 15, 1911, the said defendant failed and neglected to do the annual assessment work, or any work or labor whatever on the said Homestake or Jack Pot mining claims, or either of them during the year 1911, and failed and neglected to do the annual assessment work, or any work or labor upon either of said mining claims at any time during the year 1911, or at any time during the year 1912 prior to February 23, 1912; that on March 21, 1912, the defendant made a different application for a patent for the Homestake and Jack Pot mining claims; that during the 60 days' publication of the notice of such application, on May 17, 1912, plaintiffs filed their adverse claim to the area and premises covered thereby. It is alleged that defendant wrongfully withholds the possession from plaintiffs, to their damage in the sum of $400, and this suit was commenced within 30 days after the filing of the adverse claim, and in support of such adverse claim. The usual prayer for relief follows.

The defendant answers by a plea in abatement, which attacks the right of plaintiff Charles Francen to maintain the action, for the reason he is not a citizen of the United States. This plea was not pursued, and no action seems to have been had on it. The record fails to disclose any action taken upon the general demurrer. It was evidently waived by defendant. The amended complaint sufficiently states a cause of action.

The defendant further answers, denying the plaintiffs' ownership and right to the possession of the lands described. He denies that plaintiffs *lawfully* entered upon such premises and located them as a mining claim, and thereby in any wise acquired any right, title, or interest therein under the laws of the United States, or otherwise. He denies that at the time of the attempted location the ground was open to mineral location, and alleges that the plaintiffs entered on said ground and made their pretended locations thereon as trespassers against this defendant, and not otherwise. He denies, upon information and belief, that the plaintiffs, within 90 days after February 23, 1912, or at any other time, performed the necessary location work on said claims; denies that on the twenty-first day of March, 1912, defendant *wrongfully* entered upon said mining claims, and alleges that the said ground has been lawfully held, possessed, and enjoyed by defendant as the Jack Pot and Homestake mining claims for more than five years prior to the commencement of plaintiffs' action, and that neither of the plaintiffs has ever had and has not yet any right, title, or interest thereto; denies any damage resulting to the plaintiffs.

As a cross-complaint defendant alleges his citizenship and residence; that he, for more than five years last past, with his predecessors in interest, has been the owner of, and entitled to the possession of, the Jack Pot and Homestake lode mining claims, giving the place of record of the location notices, book and page; alleges the location of the claims more than five years prior to the commencement of this action, by the entry upon the ground, the discovery of mineral in place; that the ground was open and unoccupied mineral land of the United States; that the required monuments were erected, notices posted and recorded showing a due and regular location of the mining claims in detail, and the due re-

cording of the notices of location. It is then alleged: That ever since the date of location the cross-plaintiff or his predecessors in interest have performed upon each of said mining claims at least $100 worth of work and improvements during each year following the year in which said locations were made, until and including the year 1910. That on December 1, 1909, cross-plaintiff filed his application in the United States land office at Phoenix designated as mineral application 07574, for said Homestake and Jack Pot lodes, the official survey of which claims was numbered 2670. That in due time thereafter the register of said United States land office at Phoenix issued his final certificate to cross-plaintiff for the purchase price of said Jack Pot and Homestake lode mining claims; but thereafter, on the fifteenth day of September, 1911, the general land office of the United States, at Washington, D. C., canceled said entry, for the sole and only reason that the application therefor had been made by an attorney in fact of said cross-plaintiff while said cross-plaintiff was an actual resident of Mohave county, Arizona. "That thereafter, in order to correct the mistake so made in application for patent of said cross-plaintiff on March 21, 1912, renewed his mineral application under number 016997 for the same lodes, the same being in all respects simply a continuation of the original application, and at all of the times since the said original application the cross-plaintiff had on deposit with the treasurer of the United States, and still has, the amount of money required by law to cover the purchase price of said lode mining claims, and each of them. That, under the laws and regulations pertaining to such matters, cross-plaintiff says that it was not required of him that he should perform any assessment work or annual labor upon said lodes, or either of them, subsequent to the time of making his application for patent, and paying in the purchase price to the register and receiver, and for that reason only the cross-plaintiff was advised, and believed that it was not required of him, that any assessment work or annual labor should be performed upon said claims, or either of them, for the year 1911, but that the title of said claims after payment by him of the said purchase price was held in trust by the United States of America for his benefit, and that none of the ground comprising said claims was or has been

since the date of paying in said money subject to location by any person or persons."

Prayer for establishing his title, and for the disallowing of the claim of plaintiffs' title, and for costs.

It will be observed that the cross-complaint places in issue no fact asserted in the amended complaint. The only new matter of fact set forth in the cross-complaint is the allegation of the payment of the purchase price of the Homestake and Jack Pot, and that the money so paid remains in the United States treasury. As that fact was not denied, it must be deemed admitted.

The facts found by the court are as follows:

"First. That the plaintiff J. E. Shank is now and on the twenty-third day of February, 1912, was a citizen of the United States, and that Charles Francen had, on the twenty-third day of February, 1912, declared his intention of becoming a citizen of the United States; that at all of the times herein mentioned the defendant, J. R. Holmes, was and now is a citizen of the United States.

"Second. That for a number of years prior to the 23d of February, 1912, the defendant J. R. Holmes and his predecessors in title had been the owners of, and in possession, and entitled to the possession as against all parties, save and except the United States of America, of those certain lode mining claims situate in San Francisco mining district, Mohave county, Arizona, known as the Jack Pot lode, the notice of location whereof is of record in Book S of Mines, at page 52, and the Homestake lode mining claim, the notice of location whereof is of record in Book T of Mines, at page 41, and that the location of said claims was in all respects in compliance with law, and that the annual labor upon them, and each of them, was performed by said J. R. Holmes and his predecessors in interest, for each and every year since the location thereof, until and including the year 1910; that no labor was performed on said claims, or either of them, by said J. R. Holmes or his predecessors in interest during the year 1911.

"Third. That on December 1, 1909, the said J. R. Holmes, by Charles W. Miller, Jr., his attorney in fact, made application for patent before the register and receiver of the United States land office at Phoenix for said Homestake and

Jack Pot lodes, designated in said application as mineral survey No. 2670, and that on the eighteenth day of March, 1910, the register and receiver of said land office issued final certificate to said J. R. Holmes, No. 386,218. That on the fifteenth day of December, 1911, the commissioner of the general land office, at Washington, canceled the said entry, and rejected the said application, for the reason that said application had been made in behalf of said J. R. Holmes, by an attorney in fact, at a time while the said applicant, J. R. Holmes, was a resident of the district in which said mining claims were and are located. That the purchase price of said claims remained upon deposit with the proper officials, and still so remains.

"Fourth. That on March 21, 1912, the said J. R. Holmes made mineral application No. 016,997 for the same lodes, upon the same mineral survey, and under the same payment of purchase price.

"Fifth. Prior to the time of making said renewed application, that is to say, on the twenty-third day of February, 1912, the plaintiffs herein relocated all of the ground embraced in said Jack Pot and Homestake lodes under the name of the Lucky Budge and Lucky Chance lode claims, the notices of location whereof are of record as set forth in plaintiff's complaint; and that within ninety days after the date of said location the plaintiffs performed the necessary location work, made discovery of mineral in place, and did every other act and thing required by law to be done in the matter of locating mineral claims, under the law of the United States, and the State of Arizona.

"Sixth. That the said plaintiffs, in making said location, based their right to do so upon the fact that no annual labor or assessment work had been done upon either of said claims by the said J. R. Holmes, or anyone for him, for the year 1911, and that there had been no resumption of work by the said J. R. Holmes.

"Seventh. That on May 17, 1912, the plaintiffs herein duly filed in the United States land office at Phoenix their adverse claim and protest against said mineral application No. 016,997 aforesaid, and brought their action in this court in support thereof within thirty days thereafter.

"Eighth. That after the location of said Lucky Chance and Lucky Budge mining claims, and prior to March 21, 1912, the plaintiffs notified defendant that they had located said claims.

"Ninth. That, for the greater part of the time since the attorney in fact for the defendant made his original application for patent, the defendant has been absent from Arizona, in northern California, and that the letters and notices sent out from the land office respecting said application have been sent to his said attorney in fact. For that reason, it has been in most cases many weeks before the defendant personally became aware of the situation, and particularly is this true of the letter of the commissioner dated December 8, 1910, which defendant did not learn of until months thereafter, and the letter of September 15, 1911, canceling the entry. That the only reason defendant did not perform his assessment work for 1911 was that he in good faith believed that the defects in his application were only technical, as he still believes, and that, after having paid in his money to the United States, he was wholly relieved, morally and legally, from any further expenditures on said claims, and that the legal title thereto was held for him in trust by the United States pending the issuance of patent."

The findings follow the stipulation of the facts in all material particulars. The date of the letter of the assistant commissioner of the general land office canceling the entry is given in the findings as of December 15, 1911, while the fact appears that such letter bears date of September 15, 1911. The mistake in the month is evidently a clerical error, and is not material. The defendant, in his cross-complaint, alleges that his former entry was canceled by the general land office on the 15th of September, 1911, "for the sole and only reason that the application therefor had been made by an attorney in fact of said cross-plaintiff while said cross-plaintiff was an actual resident of Mohave county, Arizona." The same language is used by the court in the findings of fact; while the evidence on that point as contained in the letter is that the entry was canceled for the reason "no proper affidavit of continuous posting has been furnished." The letter of the general land office discloses that the affidavit of continuous posting of the notice of the application for

patent and the ''charges and fees were sworn to by Charles W. Miller, Jr., as attorney in fact, whereas applicant stated in his affidavit of citizenship that he was a resident of Arizona, and therefore within the land district.''

The decision of the general land office canceling the entry of public lands is binding upon the courts when such decision has become final. *Smelting Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Knight* v. *United Land Assn.,* 142 U. S. 211, 35 L. Ed. 974, 12 Sup. Ct. Rep. 258.

The decision of cancellation was rendered September 15, 1911. Appellee contends that his renewed application for patent made on March 21, 1912, upon the same official survey and payment of the purchase price of the lands, was and is a continuation of his original application. The court properly finds that the application of March 21, 1912, was a ''mineral application.'' Beyond question such application was an original application for a patent, which required the performance of every act and thing required by the laws to be performed in the same manner and to the same extent as if no former application had been made.

The official survey of the premises may be made to serve for the two applications so far as the proceedings of the last application has progressed. The mere canceling of the entry, in which the official survey was a part, in no manner affected the plat and field-notes of the survey, or prohibited their use or a copy of them to be used in a subsequent application for a patent for the same premises. The purchase price of the land must be on deposit, and so remain until accepted by the Interior Department. The Interior Department has no right to accept the purchase price of public lands, and appropriate the same to the sale of any specific tract of public lands, until the purchaser has met all the conditions prescribed by law and the legal regulations made pursuant thereto which entitle him to the full legal right to become the purchaser.

The decision of the land office in this case canceling the entry is conclusive that the entryman failed to meet all such conditions, viz.: He failed to furnish a proper ''affidavit of continuous posting.'' Section 2325, United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1429, 5 Fed. Stats. Ann., p. 31), requires of the claimant for a patent: ''. . .·

At the expiration of tho sixty days of publication the claimant shall file his affidavit, showing that the plat and notice have been posted in a conspicuous place on the claim during such period of publication. If no adverse claim shall have been filed with the register and receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter. Provided, that where the claimant for a patent is not a resident of or within the land district wherein the vein, lode, ledge, or deposit sought to be patented is located, the application for patent and the affidavits required to be made in this section by the claimant for such patent may be made by his, her, or its authorized agent, where said agent is conversant with the facts sought to be established by said affidavits.''

The cancellation of the entry adjudicates the fact that the entryman obtained no title at all by his entry, and by such act of the land office the entryman is deprived of the ability to claim any right under his receipt. *Murray* v. *Polglase,* 23 Mont. 401, 59 Pac. 439.

The mere fact that the amount of money sufficient to purchase the ground remained on deposit after the entry was canceled could give appellee no equitable rights to the ground he wished to purchase therewith. Neither would the fact that appellee procured an official survey to be made of the ground alone create any title thereto in appellee.

The contention of appellee that the renewed application for patents was made by him on March 21, 1912, upon the same official survey and payment of the purchase price, is unsound. The application of March 21, 1912, was an original application for patent open to all attacks that may properly and legally be directed against such application, notwithstanding the former application and the official survey, and money remaining on deposit.

The appellee, in making the application for a patent on March 21, 1912, thereby accepted and acquiesced in the decision of the general land office canceling his former entry.

From the date of cancellation, September 15, 1911, the appellee's right to the possession of the grounds located depended upon the locations and the rights arising therefrom under the laws pertaining thereto. *Adams* v. *Polglase*, 32 Land Dec. Dep. Int. 477; *Murray* v. *Polglase*, 23 Mont. 401, 59 Pac. 439; *McGowan* v. *Alps Consol. Min. Co.*, 23 Land Dec. Dep. Int. 113; *McKnight* v. *El Paso Brick Co.*, 16 N. M. 721, Ann Cas. 1912D, 1309, 120 Pac. 694; *Peoria & Colo. M. & M. Co.* v. *Turner*, 20 Colo. App. 474, 79 Pac. 915; Martin's Mining Law, p. 28, sec. 41.

The last authority says: "The cancellation of the entry—of the receiver's receipt—is, like its issuance, a mere incident in the proceedings prescribed for procuring title from the government. Although the receiver's receipt while it remains in force is evidence of compliance with preliminary patent conditions, yet its revocation, and nothing more, of itself, does not evidence either a forfeiture or relinquishment of the location or claim by the applicant. It has no necessary connection either with the segregation of the land from the public domain or its restoration thereto."

The question at issue in this appeal is whether the appellee's right to the possession of the lands was forfeited by his failure to perform the annual assessment work thereon for the year 1911. The trial court as a conclusion of law decided appellee had not abandoned the lands by such failure, or otherwise. The court failed to pass upon the question of forfeiture, although such was the question involved in the case.

"Abandonment, as applied to mining claims held by location merely, takes place only when the locator voluntarily leaves his claim to be appropriated by the next comer, without any intention to retake or claim it again, and regardless of what may become of it in the future. A forfeiture takes place by operation of law, without regard to the intention of the appropriator, whenever he neglects to preserve his right by complying with the conditions imposed by law; that is, to make the required annual expenditures upon the claim within the time allowed. The former involves an inquiry of fact as to the intention as well as the act; in regard to the latter the inquiry is: Has the required expenditure been made as the law commands?" *McKay* v. *McDougall*, 25

Mont. 258, 262, 64 Pac. 669, 670, 87 Am. St. Rep. 395, 397, and note page 403.

It is a conceded fact that the expenditure was not made for the year 1911. We have seen that on September 15, 1911, and thereafter, the appellee was holding the lands as a locator only. We think the law clearly commands such a claimant to make the expenditure for the year 1911, else suffer the consequences of a forfeiture. The appellants initiated their claim to the lands February 23, 1912, and in due time completed their location of the premises, which we think clearly worked a forfeiture of the claim of the appellee thereto.

At the date of the application for a patent, March 21, 1912, under the admitted facts all the rights of the appellee in and to the possession of the lands had been forfeited to the appellants, by reason of the failure of appellee to make the required expenditure for the year 1911, and the relocation of the grounds by the appellants on February 23, 1912, and the trial court should have so adjudged. The judgment of the court is not supported by the finding, and the court committed manifest and fundamental error as appears upon the face of the record.

The judgment is reversed and remanded to the superior court of Mohave county, with instructions to enter judgment for the plaintiffs for the possession of the premises as the law requires.

FRANKLIN, C. J., and ROSS, J., concur.

Application for rehearing denied.